ETERNAL CEMETERY CORPORATION
et al., Appellants,

v.

W. F. TAMMEN et al., Appellees.

No. 15997.

Court of Civil Appeals of Texas.

Fort Worth.

May 1, 1959.

Rehearing Denied June 5, 1959.

Jones, Parish & Fillmore, and Clyde Fillmore, Wichita Falls, for appellants.

Stine & Stine, and Pierre M. Stine, Henrietta, for appellees.

MASSEY, Chief Justice.

This is a suit for permanent injunction. Actually, there were two sets of plaintiffs who were seeking the injunction, the grounds upon which each set predicated its plea for the relief being separate and distinct. The injunction was granted in the trial upon a judgment, the form of which upheld the grounds of both sets of plaintiffs. In other words, the trial court held that one set of plaintiffs was entitled to injunction on the ground that the use to which the defendants sought and threatened to put the surface of their land would destroy the mineral estate under the same, a fractional interest therein belonging to the plaintiffs. The trial court held that the other set of plaintiffs, adjoining landowners, was en-

titled to the identical injunction on the ground that the putting of the defendants' land to the use threatened would amount to a nuisance which would injure and damage the adjoining lands.

From the judgment the defendants, Eternal Cemetery Corporation and others named as interested in and having control of the approximately 35 acres of land in Clay County, Texas, have brought an appeal.

Judgment affirmed as to the plaintiffs interested in preserving the rights incident to ownership of the fractional mineral interest under the 35 acres in question. Judgment reversed and rendered as to the plaintiffs who seek injunction on the ground of nuisance.

We will initially consider the phase of the case relating to the minerals. The undisputed proof in the record is to the effect that if and in the event the land in question is dedicated to the burial of the dead and developed in accord with the defendants' intentions, the entire surface will be used. Incident to such a use and complete development, there would be no area sufficient to drill a well in the search for and production of oil and/or gas, if any underlie the premises. Further, that such would render impossible any search or production, and hence render worthless any mineral interest such as oil or gas.

The plaintiffs whose interest relates to the minerals are the ten heirs of Ola Mae Wiley. They own an undivided one-half royalty interest in and to the minerals. The interest is non-participating. The owners do not have the right to lease or to any part of any bonus paid in case of any lease, or to any part of any delay rentals which might be payable. There is no mineral lease on the premises.

The parties concede that there would be no adequate remedy at law, as by damages, if and in the event the said plaintiffs have such a right as entitles them to relief. The plaintiffs insist that they are entitled to prevent action over their objection and pro-

test threatened and impending on the part of the defendants which would forever destroy any hope of profit from the interest to which they have title. We agree with the contention.

■ The grant or reservation of minerals carries with it, as a necessary appurtenance thereto, the right to use so much of the surface as may be necessary to enforce and enjoy the mineral estate conveyed or reserved. Harris v. Currie, 1943, 142 Tex. 93, 176 S.W.2d 302; 31–A Tex.Jur., p. 95, "Oil and Gas", sec. 52, "Use of Surface by Mineral Owner; Mineral Easement", and pages 206–210, secs. 125–128, inclusive, relating to rights relative to "surface uses."

■ The royalty interest owned by the Wiley heirs amounts to a part of the mineral estate as realty. 31–A Tex.Jur., p. 822, "Oil and Gas", sec. 478, "Royalty as Real Property," citing Sheffield v. Hogg, 1934, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741. This would not be changed because said heirs had not inherited the greater interest inherent in some other types of royalty interests. They own the oil and gas in place under the land as cotenants of the mineral estate along with those who have the leasing rights and remaining mineral estates, etc., under the land (in this case, the defendants). Their co-ownership partakes of the nature of a partnership, and in such cases such co-owners owe to one another the duty to cooperate where loss or serious injury to the property (the mineral estate) is threatened, to the end that it be prevented. 31–A Tex.Jur., p. 36, "Oil and Gas", sec. 11, "Cotenancy."

■ Here, there is an implied contract between the parties owning respective interests in the estates of the land, including the owners of the surface, to so exercise their respective rights therein as to avoid injury to the rights of the other parties. Humble Oil & Refining Co. v. Wood, Tex. Com.App.1927, 294 S.W. 197, at page 199, denying rehearing of Tex.Com.App., 292 S. W. 200.

The student is referred to an excellent article on the matter of non-participating royalty in Texas Law Review, vol. 26, beginning at page 569. That the duty to one another of parties owning respective interests in the estates of the land extend in some respects even to affirmative duties is to be noted in the section of the article beginning at page 580, under the sub-head, "Implied Covenant Requiring Utmost Fair Dealing and Diligence in the Exercise of the Exclusive-Leasing Privilege."

■ We have therefore concluded that the plaintiffs who were interested in the mineral estate were entitled to and properly granted an injunction by the trial court.

Our conclusion is to the contrary as applied to the plaintiffs who owned neighboring property. Essentially, their claim is that the burial of the dead upon the 35 acres in question will contaminate the ground and that the seepage and flow of waters therefrom onto their property will pollute the water wells and stock tanks located thereon.

■ The defendants do not deny that if there was or would be contamination as a result of the burial of human bodies on the proposed cemetery lots desired to be located on the land in question, either to the surface waters or to the subterranean sands, passages and water streams flowing thence to water wells and water sands used by the plaintiffs for drinking purposes, then the use planned would be a nuisance. The defendants contend, however, and we agree, that the facts in the case do not allow such conclusion, but on the contrary refute it.

■ The latest case on the question is that of Jones v. Highland Memorial Park, Tex.Civ.App., San Antonio, 1951, 242 S.W. 2d 250. Citing the earlier Texas cases, the court states (at page 252) that the burden is upon them who seek injunction against a use such as that planned in the present instance by the defendants, to show with definiteness and certainty that their wells will be contaminated if the proposed cemetery is opened and operated. We do not believe that we can improve upon the San Antonio court's explanation and exposition of the law relative to the matter before us. Here, as was true there, the requisite burden of proof was not discharged by the adjoining and neighboring landowners and their tenants, and they therefore were not entitled to any injunction in anticipation of nuisance. We see no necessity to detail the evidence which was introduced in any demonstration of our conclusion that the burden of proof was not discharged.

The judgment, in so far as it enures to the benefit and establishes the right of the heirs of Ola Mae Wiley, is affirmed. In so far as the judgment establishes and declares the rights of any other of the plaintiffs in said suit, it is reversed and rendered in favor of the defendants.

BOYD, J., dissents.

BOYD, Justice (dissenting in part).

I concur in the reversal of the judgment which granted an injunction on the application of the adjoining property owners; but I think the judgment which granted an injunction on the application of the royalty owners should be reversed.

The purchaser of all the estate except one-half of the royalty has the privilege of leasing for mineral development. He also has the privilege of drilling. The "privilege" to lease or drill is also the privilege not to lease or drill. He therefore may, but he is not required to, explore for minerals, and, if he finds any, develop the mineral potential. The original owner had that right, but parted with it, and cannot now demand that mineral development be had, nor interfere with the use of the surface. The present owner of the land has only the obligation to deliver to the royalty owners one-half of the royalty on whatever minerals are produced. If none is produced, for whatever reason, they get nothing.