Brad **AERY** and **Randi Aery, as Plaintiffs; and J. L. House Trust, Lloyd House, Robert Eugene House, Magdalen House, Judith Ann House, Wayne House, Jimmy R. House, Edna Pawelek Ulbrich, Peter Pawelek, Jesse Pawelek, Ruby Pawelek Schumacher, Elizabeth Pawelek Reich, Roy Pawelek, Darlene Williams, Diane Fischer Casey, Mary Kay Fischer Adams, and Arley House, as Intervenors and Third-Party Plaintiffs, Appellants**

v.

**HOSKINS, INC., C. Clifton Hoskins, Hazel Q. Hoskins Living Revocable Trust, Hazel Q. Hoskins, Trustee, Lee Ann Kulka, Lee Roy Hoskins, III, Andrea Jurica, Blake C. Hoskins, Brent C. Hoskins, and Leonard K. Hoskins, as Defendants, and Aurora Resources Corp., Armadillo E&P, Inc. f/k/a Texoz E&P II, Inc., Texoz E&P I, Inc., Sea Eagle Ford, LLC, and Sundance Energy, Inc., as Third-Party Defendants, Appellees**

No. 04–14–00807–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: March 30, 2016

---

Rosemarie Kanusky, John W. Weber Jr., Jeffrey Webb, Fulbright & Jaworski L.L.P., Daniel Pozza, Pozza & Whyte, PLLC, Melanie Phipps Sanders, Kustoff & Phipps LLP, Marc Whyte, Beirne, Maynard & Parsons, LLP, San Antonio, TX, Attorneys for Appellant.

Julia Wommack Mann, Peter Earl Hosey, Jackson Walker LLP, San Antonio, TX, David William Navarro, Hornberger Sheehan Fuller & Beiter Inc., San Antonio, TX, David L. Ylitalo, Attorney at Law, San Antonio, TX, Bruce D. Oakley, Hogan Lovells US LLP, Houston, TX, Ellen Mitchell, C. David Kinder, Dykema Cox Smith, San Antonio, TX, Roberta Shellum Dohse, Conner Jackson, R. Clay Hoblit, Hoblit Ferguson Darling LLP, Corpus Christi, TX, Jason Allen Newman, Baker Botts LLP, Houston, TX, Ezra Johnson, Uhl, Fitzsimons, Jewett & Burton PLLC, San Antonio, TX, Michael C. Sartori, George West, TX, Benjamin F. Youngblood, III, San Antonio, TX, Attorneys for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Jason Pulliam, Justice

## OPINION

Opinion by: Jason Pulliam, Justice

### INTRODUCTION

This litigation arises from a dispute involving three siblings' agreement to pool and share royalty interests in each of their three separate tracts of land. This appeal concerns the issue whether one sibling's undivided royalty interest held in the other tracts included in the pool became an appurtenance to his land and thereby was passed with that sibling's conveyance of his land through a general warranty deed. The appellants assert that by acquiring the land of one of the siblings, appellants also acquired his undivided royalty interest held in the land of the other siblings. The trial court granted declaratory relief on the parties' competing motions for summary judgment, stating a sibling's undivided royalty interest held in other tracts in the pool did not pass with that sibling's conveyance of his tract through a general warranty deed.

We affirm the trial court's declaratory judgment.

### PROCEDURAL HISTORY

The subject real property from which this litigation arises originally consisted of 2,471.8 acres known as the Rose Teal Quinn Ranch (hereinafter referred to as "the Quinn Ranch"). In 1957 and 1963, Rose Quinn partitioned the surface estate of the Quinn Ranch and conveyed specific tracts to her three children: Hazel Hoskins, Sam Quinn, and Frances Ray. Rose also conveyed to her three children an undivided mineral interest in the Quinn Ranch. Also in 1963, the three siblings executed an agreement ("the Sibling Agreement") which acknowledged the individual tracts conveyed to each and the undivided mineral estate. In the Sibling Agreement, the siblings partitioned the undivided mineral estate. The Sibling Agreement was filed in the real property records in McMullen County.

This appeal arises from suit brought by numerous plaintiff parties and intervenors who are all derivative of two principal parties, Brad Aery and Lloyd House (hereinafter collectively referred to as the House parties). The House parties derive their interest in the subject surface estate and mineral estate through Sam Quinn. The House parties brought suit against numerous defendants, principally within and derived from the Hoskins family (hereinafter collectively referred to as the Hoskins parties).[1] The House parties asserted numerous causes of action and sought declaratory relief pertaining to the parties' competing claims to royalty interests in production on the tracts originally devised to Hazel Hoskins and Frances Ray. Several of the Hoskins parties asserted counterclaims.

C. Clifton (Cliff) Hoskins and the House parties filed competing motions for partial summary judgment on the House parties' declaratory-judgment claims. Initially, on August 4, 2014, the trial court granted

---

1. The Hoskins parties have been and are involved in litigation against each other involving two tracts of land involved in this litigation: (1) derived through probate of the wills of Hazel and L.R. Hoskins; and (2) derived through arbitration and bankruptcy proceedings. *See, e.g., Hoskins v. Hoskins,* No 04–13–00859–CV, 2014 WL 5176384 (Tex.App.—San Antonio Oct. 15, 2014, pet. granted Nov. 20, 2015); No. 1785, *In the Estate of Lee Roy Hoskins, Deceased,* pending in the County Court of Live Oak County, Texas; *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.,* 345 S.W.3d 537 (Tex.App.—San Antonio 2011, no pet.). The consolidated reference of the Hoskins parties is for convenience, only, and in no way indicates any alliance of the parties or determination of any dispute between these parties.

Clifton Hoskins' first amended motion for partial summary judgment on the House parties' requested declaratory relief, declaring,

> [T]he February 6, 1966 Deed from Sam E. Quinn to James L. House conveying the lands of the 623.93–acre Quinn Tract ... did not convey Sam E. Quinn's non-participating royalty interest in the Ray Tract and Hoskins Tract, originally established and described in that certain November 7, 1963 Partition and Royalty Deed ... and subsequently conveyed to Hazel Hoskins and L.R. Hoskins by that certain February 11, 1966 Deed from Sam E. Quinn to L.R. Hoskins and Hazel Hoskins conveying his non-participating royalty interests in Ray Tract and Hoskins Tract.

In making this declaration, the trial court ordered that the House parties take nothing on their declaratory-judgment claims against Cliff Hoskins.

■ In response to this Order, the remaining defendant parties filed numerous derivative summary judgment motions, each seeking to apply the court's declaratory-judgment holding to the causes of action asserted against them. The trial court granted all of the derivative motions for summary judgment. In its order dated September 18, 2014, the trial court ordered the House parties take nothing on any of their claims against all of the defendant parties. Finally, on October 21, 2014, the trial court entered a final judgment. In this final judgment, the trial court incorporated its previous orders and disposed of all pending motions. By incorporating its previous orders, the trial court rendered a final judgment that effectively denied all causes of action asserted by all parties against each other, denied all requests for attorneys' fees, and denied the House parties' requests for declaratory relief. In its construction and interpretation of the Sibling Agreement, the trial court declared through its granting of Cliff Hoskins' motion for partial summary judgment that any royalty interest on the Ray tract and the Hoskins tract originally held by Sam was passed by Sam to Hazel and L.R. Hoskins on February 11, 1966.[2]

The House parties filed a notice of appeal from the final judgment, specifically the trial court's orders: (1) denying the House parties' joint motion for partial summary judgment, dated September 18, 2014; (2) granting the derivative summary judgment motions, dated September 18, 2014; and (3) granting Cliff Hoskins' first amended motion for partial summary judgment, dated August 4, 2014.

### *Standard of Review*

■ A declaratory judgment rendered by summary judgment is reviewed under the same standards that govern summary judgments generally. *Hourani v. Katzen,* 305 S.W.3d 239, 248 (Tex.App.—Houston [1st Dist.] 2009, pet. denied); *Lidawi v. Progressive Cnty. Mut. Ins. Co.,* 112 S.W.3d 725, 729 (Tex.App.—Houston

---

**2.** Although Cliff Hoskins did not assert any claim for declaratory relief, because his motion for partial summary judgment effectively requested only a favorable finding on the House parties' requested declaratory relief, the trial court's granting of Cliff Hoskins' motion for partial summary judgment was an effective denial of the specific declaratory relief and summary judgment requested by the House parties. Thus, the summary-judgment relief did not grant more relief than what was requested. "Although a denial of summary judgment is not normally reviewable, we may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other." *See Tex. Mun. Power Agency v. Public Util. Comm'n of Tex.,* 253 S.W.3d 184, 192 (Tex. 2008); *Crimson Expl., Inc. v. Intermarket Mgmt., LLC,* 341 S.W.3d 432, 447 (Tex.App.—Houston [1st Dist.] 2010, no pet.).

[14th Dist.] 2003, no pet.). When, as in this case, both sides move for summary judgment, and the trial court grants one motion and denies the other, an appellate court must review *de novo* all questions presented and all summary-judgment evidence presented by both sides. *McCall v. McCall*, 24 S.W.3d 508, 511 (Tex.App.— Houston [1st Dist.] 2000, pet. denied). If the appellate issue raised is based on undisputed and unambiguous facts, the appellate court will review the trial court's award of declaratory relief and determine its propriety as a matter of law. *See Gramercy Ins. Co. v. MRD Invs., Inc.*, 47 S.W.3d 721, 724 (Tex.App.— Houston [14th Dist.] 2001, pet. denied) (citing *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex.1997)). The appellate court may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Gramercy Ins. Co.*, 47 S.W.3d at 724 (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988)).

■ Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). When both parties move for summary judgment on strictly legal questions, each party "bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993); *Mandell v. Mandell*, 214 S.W.3d 682, 687 (Tex.App.—Houston [14th Dist.] 2007, no pet.).

■ Declaratory judgment is not an appropriate remedy to resolve a purely factual dispute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003(a), 37.007 (West 2015); *see also Indian Beach Prop. Own-ers' Ass'n v. Linden*, 222 S.W.3d 682, 699–700 (Tex.App.—Houston [1st Dist.] 2007, no pet.). Thus, a plaintiff who moves for summary judgment on a claim for declaratory relief must conclusively prove no genuine issue of material fact exists, and it is entitled to the requested declaratory relief as a matter of law. *See Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 565–66 (Tex.App.—San Antonio 2014, pet. denied); *Indian Beach Prop. Owners' Ass'n*, 222 S.W.3d at 699–700. Likewise, a defendant is entitled to summary judgment on a plaintiff's request for declaratory relief if the defendant disproves the plaintiff's entitlement to the declaratory relief as a matter of law. *See McCall*, 24 S.W.3d at 511.

### Rules of Construction

The parties' summary-judgment arguments and the trial court's declaratory judgment involved interpretation of the Sibling Agreement. Therefore, determination of the substantive issues presented on appeal requires interpretation of this agreement and the legal implication of this interpretation.

■ If a written document or instrument is worded in such a way that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex.1991); *McCall*, 24 S.W.3d at 51. Whether an instrument is ambiguous is a question of law for the court to decide by looking at the instrument as a whole in light of the circumstances present when it was executed. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983); *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1980). Where there is no ambiguity with regard to the terms or meaning of an instrument, disagreement

over the interpretation of any provisions will not render the provision or the instrument ambiguous, for a party's construction is immaterial. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727, 732 (Tex.1981).

If an instrument is not ambiguous, it must be interpreted according to its terms. *See Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). These terms are given their plain, ordinary and generally accepted meanings unless the document itself shows that particular definitions are used to replace those meanings. *W. Reserve Life Ins. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953); *Bituminous Cas. Corp. v. Maxey,* 110 S.W.3d 203, 213 (Tex.App.—Houston [1st Dist.] 2003, pet. denied). In this interpretation, the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed within the "four corners" of the instrument. *Luckel,* 819 S.W.2d at 461; *Universal C.I.T. Credit Corp. v. Daniel,* 243 S.W.2d 154, 157 (Tex. 1951); *McCall,* 24 S.W.3d at 513. Under the "four corners rule," the intention of the parties, especially that of the grantor, will be gathered from the instrument as a whole and not from isolated parts. *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 789 (Tex.1995); *Texas Pac. Coal & Oil Co. v. Masterson,* 160 Tex. 548, 334 S.W.2d 436, 439 (1960). Construction and interpretation must give effect to all provisions so none will be rendered meaningless. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex. 1998).

Following these rules of construction, prior to beginning any substantive analysis, this court must determine whether the Sibling Agreement is unambiguous. *See Coker,* 650 S.W.2d at 393. Only if the Sibling Agreement is unambiguous will this court then determine, within the context of the competing summary judgments, the substantive issues presented on appeal pertaining to its interpretation and construction. In this substantive analysis, this court will review the trial court's declaratory judgment resulting from its interpretation of the Sibling Agreement to determine if the Hoskins parties are entitled to the trial court's specific declaration as a matter of law. *See id.* Should this court determine a fact issue exists pertaining to the trial court's summary–judgment declaratory relief, the award of summary judgment is improper. *See Schuhardt Consulting Profit Sharing Plan,* 468 S.W.3d at 565–66; *McCall,* 24 S.W.3d at 511.

## ANALYSIS

### I. Ambiguity Determination

Our reading of the Sibling Agreement reveals the terms are plain, clear and unambiguous. The instrument, itself, is worded so that it can be given a certain and definite legal meaning and interpretation. *See Coker,* 650 S.W.2d at 393.

Therefore, the Sibling Agreement is not ambiguous, and this court will construe and interpret its terms as a matter of law. *See id.*

### II. Interpretation of the Sibling Agreement

The House parties' litigation and appeal focuses on the interpretation of the Sibling Agreement and the legal implication of this interpretation. To provide foundational understanding of the interests existing at the time the Sibling Agreement was executed and of the interests it created and conveyed, this court will begin with discussion of its segments. Following this discussion, this court will then analyze the appellate arguments with regard to its interpretation of the Sibling Agreement.

### A. 1957 ("WHEREAS" Paragraph 1):

The Sibling Agreement begins by acknowledging the conveyance made by Rose Quinn to her three children in 1957. Through a mineral deed executed on December 26, 1957, Rose Quinn conveyed an undivided 1/3 interest in the mineral estate of the Quinn Ranch to each of her three children: Hazel Hoskins, Sam Quinn, and Frances Ray.

Through this transaction in 1957, all parties agree the three siblings each held an undivided 1/3 interest in the mineral estate of the Quinn Ranch, and Rose Quinn retained the surface estate.

**B. 1963 ("WHEREAS" Paragraph 2):**

The Sibling Agreement next acknowledges conveyances made by Rose Quinn to her three children on the same date and simultaneous with execution of the Sibling Agreement. By executing three separate deeds of conveyance on November 7, 1963, Rose Quinn partitioned the surface estate of the Quinn Ranch, giving each of her three children a separate and unequal tract. To Hazel Hoskins, Rose devised 1,223.94 acres ("the Hoskins tract"; 49.51% of the surface acreage); to Sam Quinn, Rose devised 623.93 acres ("Sam's tract"; 25.24% of the surface acreage), and; to Frances Ray, Rose devised 623.93 acres ("the Ray tract"; 25.24% of the surface acreage).

It is undisputed that through Rose's execution of the three deeds of conveyance, each sibling held the surface estate to their specified tract, and, through the mineral deed, each sibling held an undivided 1/3 interest in the mineral estate of the Quinn Ranch.

**C. "WHEREAS" Paragraph 3:**

The Sibling Agreement next discloses the desire and intention of the siblings in their execution of the Sibling Agreement. The siblings declare their intention to partition their undivided 1/3 mineral-estate interests in the Quinn Ranch and to assign these partitioned mineral-estate interests to their individual tracts by stating,

> It is the desire and intention ... to make a partition of our respective interest in the oil, gas and mineral estate in, on, under and that may be produced from the [Quinn Ranch], so that hereafter our said respective interest therein shall be separate and distinct, and shall be identifiable and co-extensive with our respective tract of land....

**D. "NOW THEREFORE" Paragraph 4:**

The following paragraph further acknowledges the siblings' intention to partition the undivided mineral estate interest they each held in the Quinn Ranch, by stating: "in order to effect such partition, it is hereby ... agreed ... that a partition of said oil, gas and mineral estates in, on and under [the Quinn Ranch] shall be and the same is hereby made as follows:"

The parties do not dispute, and we conclude, that within these paragraphs, the Quinn siblings' clearly expressed their intention in executing the Sibling Agreement was to partition the undivided 1/3 mineral-estate interest they each held in the Quinn Ranch into individual mineral estates assigned to each of their individual tracts.

**E. Paragraphs I through III (Description of Partition):**

Subsequently, each sibling's individual tract was described in Paragraphs I, II, and III of the Sibling Agreement. Each partition provision is identical, save for the sibling assigned and the descriptions of the land associated with the mineral estate partitioned to each sibling. The land descriptions mirror those contained in the deeds executed by Rose Quinn on the same date. Sam's tract was described as "Tract 1", Hazel Hoskins's tract was described as "Tract 2", and Frances Ray's

tract was described as "Tract 3". These mineral-estate partition paragraphs each begin with a declaration that each sibling "shall now and henceforth have ... in severalty, by himself and to him and his heirs and assigns ... free from any and all claim by the other [siblings] ... all of the oil, gas and all other minerals ... that may be produced from the following described tract ...:"

It is undisputed that following these mineral-estate partition paragraphs, Paragraphs I, II, and III, and without regard to the remaining provisions, each sibling held the surface estate and the mineral estate respective to their individual tracts. None of the siblings held any interest in any of the other siblings' tracts.

### F. Paragraph VI: Pooling Provision

In Paragraph VI of the Sibling Agreement, the siblings carved the royalty interest[3] from each sibling's mineral estate held on their separate tracts so that the royalty interest was separate and distinct from the mineral estate. The siblings then pooled these royalty interests by stating,

[The Quinn siblings] desire to and do hereby pool their interests in the royalties from the production of oil, gas and any other mineral, produced and saved from any part of the 2,471.8 acres of land, more or less, known as the [Quinn Ranch], so that in the event of production of oil, gas or any other mineral from said ... [Quinn Ranch], under the terms of any oil, gas and mineral lease or other

contract for the development and operation of any such lands for oil, gas and minerals, they shall share in the royalties therefrom in the same proportions that their respective interests in the oil, gas and mineral estate bears to the entire oil, gas and mineral estate in said ... [Quinn Ranch], that is so to say:

That the said Sam E. Quinn, his heirs and assigns, shall be entitled to an undivided 623.93/2471.8 interest in all of such royalties .... (pooling provision).

It is undisputed that at this point in the Sibling Agreement, and without regard to the remaining provisions, the three siblings each held the surface estate and the mineral estate respective to their individual tracts. In addition, the parties do not dispute that this provision carved the royalty interest from each sibling's mineral estate and created a pool of these royalty interests, only, separate from their partitioned mineral estates.[4] Thereby, through the royalty-interest pool, each sibling would receive royalty payment from production occurring anywhere on the Quinn Ranch.

The parties do dispute whether the pooled royalty interests created in each sibling an undivided royalty interest in the entire Quinn Ranch (the House parties' argument) or whether the pooled royalty interests provided to each sibling an undivided royalty interest in each of the three siblings' tracts (the Hoskins parties' argument): that is, Sam held an undivided

---

**3.** Within the context of the Sibling Agreement and its interpretation on appeal, the broad term "royalty interest" is used to describe "the right to receive royalty payments" that is one of the five attributes comprising the mineral estate and, as such, may be carved out and conveyed or reserved separate from the mineral estate. *See Luckel,* 819 S.W.2d at 463; *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986); *Hamilton v. Morris Res., Ltd.,* 225

S.W.3d 336, 344 (Tex.App.—San Antonio 2007, pet. denied).

**4.** This pooling of royalty interests was preemptive of any active lease on any of the siblings' individual tracts. While the Hoskins parties may have disputed previously whether the siblings pooled their royalty interests, they admit this fact on appeal. *See* appellate brief of appellees C. Clifton Hoskins and Hoskins, Inc., pp. 9, 14–17.

royalty interest in his tract, an undivided royalty interest in the Hoskins tract, and an undivided royalty interest in the Ray tract.

### G. Last Paragraph: Cross–Conveyance Provision

Finally, in the last paragraph of the Sibling Agreement, the siblings cross-conveyed to one another the royalty interest each held in their own tract, stating:

> The above named and undersigned parties each convey to the other parties hereto such interests in the royalties from the production of oil, gas and all other minerals from each party's respective tract of land as is necessary to effectuate the pooling and apportion among the parties hereto as hereinabove agreed and provided. (cross-conveyance provision)

Thus, upon review and construction of the whole Sibling Agreement, with regard to Sam's tract, it is undisputed that Sam held title to the surface estate and the corresponding mineral estate of his tract.[5] It is also undisputed that Sam carved the royalty interest out of his mineral estate and cross-conveyed his royalty interest held in his tract to Hazel and Frances. Likewise, Hazel and Frances cross-conveyed their royalty interests held in their individual tracts to Sam and to each other.

When read in context with the whole Sibling Agreement, especially the pooling provision, the parties do not dispute that the cross-conveyance provision expressed the parties' intention to effectuate the pooling of their individual royalty interests by cross conveyance. The parties do dispute whether the cross-conveyance provision created in each sibling an undivided royalty interest in the Quinn Ranch as a whole (the House parties' argument), or whether this provision explicitly portrayed the siblings' intention to create in each sibling an undivided royalty interest in each individual tract (the Hoskins parties' argument).

### H. 1966

#### 1. Sam Quinn to James House Conveyance

On February 8, 1966, Sam executed a general warranty deed conveying to James House his tract of 623.93 acres "together with all and singular rights and appurtenances thereto in anywise belonging." This deed contained only one reservation for Rose's life estate. The deed did not contain any other reservation of rights or otherwise mention any shared, pooled and/or undivided royalty interest in the other tracts of the Quinn Ranch.

#### 2. Sam Quinn to Hazel and L.R. Hoskins Conveyance

Three days later, on February 11, 1966, Sam executed a deed to his sister and brother-in-law, Hazel and L.R. Hoskins, conveying "all of my right, title and interest in and to the following mentioned and described tracts . . . :" the tract belonging to Hazel Hoskins and the tract belonging to Frances Ray. In addition, the deed stated the conveyance was: "[t]o have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging . . . ."

The parties do not dispute that through the general warranty deed to James

---

**5.** Only the parties' interests in Sam's tract are disputed in this litigation. Therefore, only the issues and interests as they pertain to Sam's tract will be acknowledged and discussed. While the House parties may have disputed previously whether the pooling was created by cross conveyance, they admit this on appeal. *See* "opening" appellate brief of appellants, pp. 26, 31–33.

House, Sam conveyed to House the surface estate and mineral estate in Sam's tract, which included Sam's undivided royalty interest pertinent to Sam's tract (undivided 623.93/2471.8 interest). The parties' principal dispute from which this litigation arises is whether Sam's undivided royalty interest held in the other siblings' tracts, the Hoskins tract and the Ray tract, passed to James House through the same general warranty deed (the House parties' argument), or whether these undivided royalty interests were personal interests and were passed by Sam to the Hazel and L.R. Hoskins in the subsequent deed executed on February 11, 1966 (the Hoskins parties' argument).

### I. Other Pertinent Conveyances

In 1964, Frances Ray devised to Hazel Hoskins and L.R. Hoskins all of her surface estate and mineral estate in the Ray tract, her royalty interest held in the Ray tract, as well as all royalty interest she held in the Quinn tract and in the Hoskins tract.

Subsequent to the Sam–to–House conveyance, Sam's original tract, was conveyed several more times and eventually was conveyed to the Plaintiffs in this litigation, Brad Aery and Randi Aery. The House parties in this litigation retained some mineral interest through these conveyances. In addition, each conveyance was made "expressly subject to ... [a] ... 1847.87/2471.8 royalty interest outstanding in the name of L.R. Hoskins and Hazel M. Hoskins as described in Partition Deed of Mineral Estate dated November 7, 1963 [(the Sibling Agreement)] ... and by

Mineral Deed from Sam E. Quinn to L.R. Hoskins and wife, Hazel M. Hoskins...."

It is not disputed that following these conveyances and reservations, the Aery and House parties held the mineral estate to the original Sam's tract subject to the "1847.87/2471.8 royalty interest outstanding in the name of L.R. Hoskins and Hazel Hoskins." However, when they learned they were not receiving any royalties from production on the Hoskins tract or the Ray tract, this extended litigation ensued.

### ANALYSIS

As outlined, the points of issue presented on appeal and the parties' principal disputes are two-fold. First, the parties dispute the scope of royalty interest the Sibling Agreement created for Sam: (1) an undivided royalty interest in the entire Quinn Ranch (the House parties' argument); or (2) an undivided royalty interest in each of the three individual tracts (the Hoskins parties' argument). Second, the parties dispute the nature of the royalty interest created: (1) whether Sam's royalty interest in production on the Hoskins tract or the Ray tract was appurtenant to Sam's tract, and thereby passed to House (the House parties' argument); or (2) whether the royalty interest Sam held in production on the Hoskins or Ray tracts was a personal interest and was passed to Hazel and L.R. Hoskins in the deed dated February 11, 1966 (the Hoskins parties' argument).[6]

#### A. Scope of Royalty Interest Created

■ As discussed, the House parties contend the Sibling Agreement pooled

**6.** It has been established and is undisputed on appeal that the siblings expressed intent to pool their royalty interests through a cross conveyance. The cross-conveyance paragraph is a clear and unequivocal expression of the siblings' intent to effectuate the pooling of their partitioned royalty interests by cross-

conveyance. Therefore, to the extent the parties present argument on the issue whether, under Texas law, pooling is effectuated by cross-conveyance or is effectuated under a contract theory, this argument is moot and will not be addressed.

each sibling's royalty interest in their own tract and created in each sibling an undivided royalty interest in the entire Quinn Ranch. The House parties contend the plain language of the Sibling Agreement shows the siblings intended to retain the pooled tracts as a unified whole, rather than distinct parts. Although they agree that the siblings cross-conveyed their royalty interests, the House parties contend "nothing suggests the siblings intended to create divided royalty interests in three separate tracts."

The Hoskins parties contend the Sibling Agreement created in Sam a "non-participating interest in royalty" in each of the other two tracts owned by Hazel Hoskins and Frances Ray. Thereby, the royalty interests held in the three tracts remained separate and did not merge into an undivided royalty interest in one block of land, or the Quinn Ranch. Therefore, the contemporaneous cross conveyances created for each sibling an undivided royalty interest in each of the three tracts, rather than an undivided royalty interest in the entire Quinn Ranch.

■ A royalty interest, as one of the five attributes of a mineral estate, is an interest in real property, and thereby has the same attributes as real property. *Lyle v. Jane Guinn Revocable Trust*, 365 S.W.3d 341, 351 (Tex.App.—Houston [1st Dist.] 2010, pet. denied); *Hamilton*, 225 S.W.3d at 344. As such, a royalty interest may be severed from the mineral estate and held separately, pooled, conveyed, or reserved in connection with a conveyance of the mineral estate. *Lyle*, 365 S.W.3d at 351; *Hamilton*, 225 S.W.3d at 344. Once carved from the mineral estate, a royalty interest creates in the holder a simple right to payment of royalties derived from production of oil, gas, and other minerals corresponding to its respective mineral estate. *Plainsman Trading Co. v. Crews*,

898 S.W.2d 786, 789–90 (Tex.1995); *see also Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 167–68 (1953) (enumerating the various attributes of the mineral estate); *Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 824 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.) (noting nonparticipating royalty owner has no right to participate in "leases of the mineral estate to which the royalty is appurtenant").

■ As in this case, a royalty interest carved from its mineral estate may be pooled with other royalty interests that derive from other mineral estates. When effectuated through a cross-conveyance of interests, such a pooling results in a significant change in ownership of the respective royalty interests, as each member gives up full ownership and conveys to the other members a share of their royalty interests. *See Montgomery v. Rittersbacher*, 424 S.W.2d 210, 213 (Tex.1968). A principal rationale for relinquishment of this ownership of royalty interest is because each member of the pooling agreement obtains an undivided joint ownership in the royalty earned from the land in the "block" created by the pooling agreement, and thereby, shares in production that occurs anywhere within the pooled "block." Thus, after pooling, each member of the pooling agreement owns an undivided interest in the entire pooled unit typically in the proportion that each owner's contribution bears to the pooled unit. *Montgomery*, 424 S.W.2d 210; *Wagner & Brown, Ltd. v. Sheppard*, 198 S.W.3d 369, 376–77 (Tex. App.—Texarkana 2006) *rev'd on other grounds*, 282 S.W.3d 419 (Tex.2008); *MCEN 1996 P'ship v. Glassell*, 42 S.W.3d 262, 263 (Tex.App.—Corpus Christi 2001, pet. denied); *MCZ, Inc. v. Triolo*, 708 S.W.2d 49, 52–53 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). While the pooling creates in each member an undivided royalty interest in the land in the

"block", these undivided interests are property rights that also can be freely acquired and conveyed. *See Wagner & Brown, Ltd. v. Sheppard*, 198 S.W.3d at 376–77; *MCEN 1996 P'ship*, 42 S.W.3d at 263; *MCZ, Inc.*, 708 S.W.2d at 52–53; *Whitaker v. Neal*, 187 S.W.2d 147, 148 (Tex.Civ.App.—Texarkana 1945, writ ref'd).

Thus, under the Sibling Agreement in this case, the siblings expressed their intention to carve the royalty interests from their individual, partitioned mineral estates and pool these royalty interests. Thereby, the siblings each obtained an undivided royalty interest in the entire pooled unit, i.e. the Quinn Ranch. As stated in the pooling provision of the Sibling Agreement, each sibling held an undivided royalty interest in the proportion of each sibling's contribution to the whole pool. Thereby, as stated in the Sibling Agreement, Sam obtained "an undivided 623.93/2471.8 interest in all of such royalties" arising from production that occurs anywhere on the pooled block, that is, the Quinn Ranch.

### B. Nature of Pooling by Cross–Conveyance: Appurtenant to the Land v. Interest In Gross

The House parties' final argument pertains to the issue whether House received Sam's undivided royalty interest in the remainder of the pool (i.e. the right to receive royalty payments from production on the Ray and Hoskins tracts) through the general warranty deed executed upon the sale of Sam's tract. This point of issue on appeal directly relates to the trial court's relief granted in its declaratory judgment.

The House parties contend Sam's undivided royalty interest in the remainder of the pool was appurtenant to Sam's tract, and therefore, the trial court erred by declaring this interest was not conveyed to

James House. Flowing from the previous argument, the House parties contend the pooling of royalty interests created an undivided royalty interest in the whole Quinn Ranch; thus, Sam's royalty interest held in his tract was "inextricably intertwined with his siblings' mineral estates." The House parties argue any pooled royalty interest created under a pooling agreement is a real property interest and is appurtenant to any land within the pool. Because Sam did not specifically reserve for himself his undivided royalty interest in the entire Quinn ranch when he executed the deed conveying his tract, this pooled, undivided royalty interest passed to House.

The Hoskins parties contend Sam's royalty interests in the Hoskins and Ray tracts were not appurtenant to his tract, but rather, were a personal interest in gross. Therefore, these royalty interests would not pass upon conveyance of Sam's tract to House through the general warranty deed. To pass this personal interest in gross, the Hoskins parties contend the deed would have to specifically name and describe the interest. Because the Sam-to–House general warranty deed did not specifically name and include Sam's undivided royalty interest in the Hoskins tract or Sam's undivided royalty interest in the Ray tract, this undivided royalty interest did not pass to House.

The Sibling Agreement, itself, does not express clear or unequivocal intention of the siblings with regard to the issue whether any future conveyance of a sibling's tract would include that sibling's right to royalty payments from production on the other siblings' tracts. Absent any express intent within the Sibling Agreement, determination of this issue is a question of law. Should a fact issue exist that is necessary for determination of the legal issue, the trial court's summary judgment

would be improper. *See Schuhardt Consulting Profit Sharing Plan*, 468 S.W.3d at 565–66; *McCall*, 24 S.W.3d at 511.

As the term pertains to real property, any "appurtenance" to land is any right or obligation that attaches to and is tied to ownership of a particular parcel of land. *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 241 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). Appurtenances include all rights and interests necessary for the full enjoyment and beneficial and necessary use of property. *Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 106 (Tex.App.—Eastland 2010, no pet.); *Pine*, 519 S.W.2d at 241. "The word 'appurtenances' in a deed covers only what is legally appurtenant to the land described. It does not, without particular mention, convey any rights which do not naturally and necessarily belong to the thing granted in the hands of the grantor." *Hunstock v. Limburger*, 115 S.W. 327, 329 (Tex.Civ.App.1908, writ ref'd); *see also McCall*, 24 S.W.3d at 514–15. Because it is necessary to its use, an appurtenance attaches to the land that requires it and cannot be separated from it. Under this understanding, an appurtenance to land typically includes such things as improvements, buildings, littoral rights, and use of water or sewer lines. *See, e.g., Olmos v. Pecan Grove Mun. Util. Dist.*, 857 S.W.2d 734, 738 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *Pine*, 519 S.W.2d at 241; *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646 (Tex.App.—Austin 1981, writ ref'd n.r.e.) (littoral rights).

The surface-estate and mineral-estate interests of land are generally not considered an appurtenance, but rather the fee, itself. *See Harris v. Currie*, 142 Tex. 93, 176 S.W.2d 302, 304–05 (1943). However, a mineral estate can be severed from the surface estate and may be held by an owner different from the owner of the surface estate. *Id.*; *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 101 (Tex.1984); *Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex. 1971). Even so, the mineral estate belongs to, or is part of, the respective land and cannot be separated from the land. *See Harris*, 176 S.W.2d at 304–05; *Moser*, 676 S.W.2d at 101; *Acker*, 464 S.W.2d at 352. Going further, any of the five attributes of a mineral estate, including the royalty interest, can be separated from the mineral estate and held by a different owner. *Day & Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 669 (Tex.1990); *Elick v. Champlin Petroleum Co.*, 697 S.W.2d 1, 4 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). However, when any of the five attributes of a mineral estate is separated, these attributes remain appurtenant to the mineral estate from which they originated. *See Plainsman Trading Co.*, 898 S.W.2d at 789–90; *Day & Co., Inc.*, 786 S.W.2d at 669; *Elick*, 697 S.W.2d at 4. Similarly, "[t]he grant or reservation of minerals carries with it, as a necessary appurtenance thereto, the right to use so much of the surface as may be necessary to enforce and enjoy the mineral estate conveyed or reserved." *Eternal Cemetery Corp. v. Tammen*, 324 S.W.2d 562, 564 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.) (citing *Harris*, 176 S.W.2d at 304); *Stanolind Oil & Gas Co. v. Wimberly*, 181 S.W.2d 942, 944 (Tex.Civ.App.—El Paso 1944, no writ). Thus, while a mineral estate can be separated from the surface estate and further separated from its attributes, all still remain attached to the land from which they originate and derive their source. *See Harris*, 176 S.W.2d at 304–05; *Elick*, 697 S.W.2d at 4.

An appurtenance to a particular property can include rights or interests in *other* property (servient property) if the right or interest is necessary for the full

enjoyment of the property (dominant property) and is used as a necessary incident. *Pine*, 519 S.W.2d at 241; *Hancox v. Peek*, 355 S.W.2d 568, 569 (Tex.Civ.App.1962, writ ref'd n.r.e.). In such an event, the right or interest becomes an appurtenant benefit to the dominant property and an appurtenant burden to the servient property. Such an appurtenance that includes a right or interest in other property typically comprises rights such as easement of access or right of way and water rights. *See Killam Ranch Properties, Ltd. v. Webb Cnty.*, 376 S.W.3d 146 (Tex.App.—San Antonio 2012, pet. denied) (easement); *Hilburn v. Providian Holdings, Inc.*, No. 01–06–00961–CV, 2008 WL 4836840, at *2 (Tex.App.—Houston [1st Dist.] Nov. 6, 2008, no pet.) (unpublished) (easement); *Edinburg Irr. Co. v. Paschen*, 223 S.W. 329, 333 (Tex.Civ.App.—San Antonio 1920), *aff'd*, 235 S.W. 1088 (Tex.Com.App. 1922) (water rights).

 Because they attach to the land, itself, appurtenant benefits and burdens to land can be divided between different owners, but cannot be separated from the land or otherwise assigned or transferred off of the land, or fee, itself. *Holmstrom v. Lee*, 26 S.W.3d 526, 531 (Tex. App.—Austin 2000, no pet.). Therefore, to be appurtenant to land, a right or obligation must benefit or encumber the property to which it is attached; it cannot be separated from the land to which it is attached. *Holmstrom*, 26 S.W.3d at 531; *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex.1962). As attached to the land, an appurtenance automatically passes when the property is conveyed and remains with the owner or possessor of the property and/or the dominant and servient estates. *Id.*; *see also Drye*, 364 S.W.2d at 203.

 A benefit or burden related to property that is not tied to ownership or possession of the property is a personal interest, or an interest "in gross." Because an interest in gross is personal, it attaches to the holder, and the holder must specifically pass or convey the interest. *See Long Island Owner's Ass'n, Inc. v. Davidson*, 965 S.W.2d 674, 684 (Tex. App.—Corpus Christi 1998, pet. denied).

 A general warranty deed passes to the grantee all the rights, appurtenances and interests the grantor holds in the conveyed land unless there is language in the instrument that clearly shows an intention to convey a lesser interest. *Farm & Ranch Inv'rs, Ltd. v. Titan Operating, L.L.C.*, 369 S.W.3d 679, 681 (Tex. App.—Fort Worth 2012, pet. denied) (citing *Cockrell v. Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672, 675 (1957)). A reservation by implication in favor of the grantor is not favored by courts. *Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (1952); *Farm & Ranch Inv'rs, Ltd.*, 369 S.W.3d at 681; *Reeves v. Towery*, 621 S.W.2d 209, 212 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Therefore, any appurtenance (benefit or burden) to the conveyed land passes to the grantee even if not specified. *See Drye*, 364 S.W.2d at 203; *see also Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 355 (Tex.App.—Eastland 2006, no pet.) (describing covenant); *McWhorter v. City of Jacksonville*, 694 S.W.2d 182, 184 (Tex.App.—Tyler 1985, no pet.) (describing easement). To retain an appurtenance, a grantor must specifically reserve it for himself. *See Drye*, 364 S.W.2d at 203; *Farm & Ranch Inv'rs, Ltd.*, 369 S.W.3d at 681. A general warranty deed does not pass any right held by the grantor that is personal. *See Drye*, 364 S.W.2d at 203; *Farm & Ranch Inv'rs, Ltd.*, 369 S.W.3d at 681. Such a personal interest in gross must be specifically granted. *See Long Island Owner's Ass'n, Inc.*, 965 S.W.2d at 684; *McDaniel*

*v. Calvert,* 875 S.W.2d 482, 484 (Tex. App.—Fort Worth 1994, no writ).

### Application

█ It is not disputed that Sam's undivided 623.93/2471.8 royalty interest held on production occurring on his tract was tied to the mineral estate of his tract, and therefore, was appurtenant to his tract. In addition, it is undisputed that the undivided royalty interests in Sam's tract held by Hazel and Frances was also an appurtenant burden on Sam's tract, and was in fact, acknowledged in the subsequent deeds executed through to the present owners.

Applying the legal concept and definition of "appurtenance" to the issue before this court: if Sam's undivided royalty interest in the Hoskins tract and the Ray tract is appurtenant to Sam's tract, then he must have reserved this interest to retain it because, if he did not, it automatically passed to House through the general warranty deed. Likewise, if Sam's undivided royalty interest in the Hoskins tract and the Ray tract is not appurtenant to Sam's tract, but instead, is a personal interest, then Sam did not need to specifically reserve this interest to retain it, as it was not attached to his tract, and thereby did not automatically pass to House. *See Drye,* 364 S.W.2d at 203; *Farm & Ranch Inv'rs, Ltd.,* 369 S.W.3d at 681.

This issue has not been affirmatively or specifically determined under Texas caselaw; however, persuasive guidance can be obtained from Texas caselaw and jurisprudence from other jurisdictions that follow a cross-conveyance theory of pooling.

We begin with application of the definition and legal interpretation of "appurtenance". Although the siblings' royalty interests on their individual mineral estates became "intertwined" through pooling, as the House parties assert, these "intertwined" royalty interests were not "inextricable" as anticipated under the definition of "appurtenance". The pooling of the siblings' royalty interests created a relationship between them as parties to the agreement; however, each siblings' royalty interest in the pool still can be divided and separated and conveyed to others. *Lyle,* 365 S.W.3d at 351; *Hamilton,* 225 S.W.3d at 344; *MCEN 1996 P'ship,* 42 S.W.3d at 263; *MCZ, Inc.,* 708 S.W.2d at 52–53. Though "undivided", these interests are separable, and independently capable of transfer and alienation, without any conveyance of the land in the pool. *See, e.g., Day & Co., Inc.,* 786 S.W.2d at 669; *Moser,* 676 S.W.2d at 101; *Harris,* 176 S.W.2d at 304–05; *Acker,* 464 S.W.2d at 352; *Elick,* 697 S.W.2d at 4. Thus, Sam's undivided royalty interest held in the other tracts was separable from Sam's undivided royalty interest held in his own tract.

The pooling of the siblings' royalty interests created in Sam an undivided royalty interest in the block of tracts comprising the pool. *See Montgomery,* 424 S.W.2d at 210; *MCEN 1996 P'ship,* 42 S.W.3d at 263; *MCZ, Inc.,* 708 S.W.2d at 52–53. The complicating factor is that, although the royalty interests were pooled, the mineral estates respective to each tract remained partitioned. Thus, although each sibling held an undivided royalty interest in the block of tracts in the pool, the royalty interest associated with each tract was necessarily tied to each of the partitioned mineral estates. In addition, each of the other tracts, or surface and mineral estates, could be conveyed separately. Thereby, Sam's right to receive royalty interest payments from production on his tract is appurtenant to his tract, and his right to receive royalty interest payments from production on the Hoskins tract is appurtenant to the Hoskins tract, and his right to receive royalty interest payments

from production on the Ray tract is appurtenant to the Ray tract. However, the fact that Sam's undivided royalty interest in his tract is pooled with those in other tracts does not dictate or command that Sam's undivided royalty interest in the Hoskins and Ray tracts must naturally or necessarily attach to Sam's tract.

To the contrary, Sam's undivided royalty interest in the Hoskins and Ray tracts is not necessary for the use and enjoyment of Sam's tract, nor is it necessary to receive the benefits from the remaining mineral estate or the royalty interest respective to Sam's tract. Therefore, any royalty interest in other tracts created through pooling does not attach as an appurtenance to Sam's tract because it is not necessary to the use and enjoyment of Sam's tract or the mineral estate respective to Sam's tract.

Accordingly, Sam's undivided royalty interests held in the Ray and Hoskins tracts was separable from any undivided royalty interest he held in his tract. Likewise, Sam's royalty interests held in the Ray and Hoskins tracts tract was not necessary for entitlement to the royalty interest that was appurtenant to Sam's tract, nor was it necessary for the use and enjoyment of Sam's tract or the rights and interests tied to Sam's tract. Clearly, Sam's tract could be used and enjoyed, and the royalty interests tied to his tract received, without attachment to his undivided royalty interests held in the other siblings' tracts. Because Sam's undivided royalty interest in the Ray and Hoskins tracts was separable from that held in his tract and not tied to his land, it does not fall within the definition of "appurtenance" to his tract.

The general warranty deed from Sam to House conveyed only those rights which naturally and necessarily belonged to the land described. *See Hunstock*, 115 S.W. at 329. Sam's undivided royalty interests held in the Hoskins and Ray tracts did not naturally or necessarily belong to Sam's tract, the land described within the general warranty deed. Therefore, this undivided royalty interest did not pass from Sam to House in the general warranty deed.

Finally, two cases provide persuasive guidance for determination of this issue: *McCall v. McCall*, 24 S.W.3d 508, 514–16 (Tex.App.—Houston [1st Dist.] 2000, pet. denied) and the case it relies upon, *Avery v. Moore*, 150 W.Va. 136, 144 S.E.2d 434 (1965). While the facts in *McCall* are not directly on point, the holding is applicable to these facts. In addition, in reaching its conclusion, the court in *McCall* relied upon *Avery v. Moore*, which is factually similar.

In *McCall*, the property at issue was originally jointly owned by Taub, Dwyer and McCall, but was partitioned. *McCall*, 24 S.W.3d at 509–10. That is, similar to this case, each party held an undivided interest in the surface and mineral estate, and then partitioned the subject estates into individual tracts. *Id.* At the time of partition, the Taub and Dwyer parties were given a 20% royalty interest in the McCall tract, and McCall was given a 10% royalty interest in the Taub and Dwyer tracts. *Id.* Also at the time of partition, the unit was subject to three active leases. *Id.* Each party retained their existing interest in the royalties under these existing leases. *Id.* The McCall tract was conveyed multiple times and eventually a new pooled unit was formed that did not include the McCall land. *Id.* at 511. One of the conveyances was from Mrs. McCall to the Appellant, Lila. *Id.* Lila argued, as do the House parties in this case, that her deed from Mrs. McCall conveyed not only all of Mrs. McCall's interests in the McCall tract, but also Mrs. McCall's royalty interest in the Taub and Dwyer tracts. Lila also argued Mrs. McCall's royalty interests under the existing leases in other

tracts (the Taub and Dwyer tracts) were appurtenant to her property obtained from Mrs. McCall, and thus passed to her absent any specific reservation by Mrs. McCall. *Id.* at 511–12.

The facts in *McCall* are distinguishable, in that the royalty interests in the three tracts were not pooled. Instead, each of the original parties (Taub, Dwyer, and McCall) gave specific royalty interests to the other parties. However, the court's holding with regard to the issue whether royalty interests in other lands passes as an appurtenance is still persuasive guidance to disposition in this case.

The *McCall* court held that a property owner's royalty interest that is appurtenant to property *other than the one conveyed* is not impliedly included in the conveyance of that owner's property. *Id.* at 513–15. Such a royalty interest must be explicitly conveyed or transferred. *Id.* Thus, the *McCall* court concluded that any royalty interests *in other tracts* held by a grantee were not appurtenant to that grantee's land. *Id.*

The *McCall* court relied upon *Avery v. Moore*, 150 W.Va. 136, 144 S.E.2d 434 (1965), as support for this conclusion. *Id.* at 514–15. In *Avery*, similar to this case, a large tract of land was partitioned into five tracts. *Avery*, 144 S.E.2d at 436. In the partition, the plaintiff was conveyed a 50-acre tract of land and a ⅕ mineral interest in each of the five parcels of land. *Id.* The other ⅘ of the mineral estate was held by the other owners who were a part of the partition. *Id.* Later, the plaintiff conveyed the 50 acres to the defendant. *Id.* at 437. A dispute arose over ownership of the 1/5 mineral interest in each of the other four parcels of land that the plaintiff was provided in the partition. *Id.* at 436.

In *Avery*, the parties' royalty interests were not obtained through pooling, but were acquired and assigned through the partition of the land. While not factually identical, and while the parties did not expressly pool their royalty interests, the resultant relationship of the parties and the separation of the royalty interests created through the partition was similar to that of the siblings in this case. The plaintiff argued the 1/5 mineral interest in the *other* four tracts was an interest in gross and thereby did not pass to the defendant upon conveyance of the plaintiff's tract. *Id.*

The *Avery* court held a deed conveying a tract of land that had been partitioned from a larger tract conveys only the rights and interests of the grantor in the mineral estate within and under *the devised tract*, and does not convey the grantor's royalty interests held in *other tracts* as a result of the earlier partition. *Id.* at 438. Specifically, the *Avery* court stated, "such deed does not grant and convey to the grantee any interest of the grantor in and to the oil and gas within and under all or any of the other four tracts involved in the partition of the larger tract of land." *Id.* While *Avery* does not discuss the legal meaning of "appurtenance," the holding and reasoning are applicable here, and the *McCall* court found *Avery* persuasive in a comparable factual situation. *See McCall*, 24 S.W.3d at 514–15.

The reasoning and conclusions drawn in *McCall* and *Avery* are persuasive and applicable to the facts in this case. Following the reasoning in those cases, we conclude Sam's undivided royalty interests held in the Hoskins tract and the Ray tract, gained through the partition of mineral estates and contemporaneous pooling and cross-conveyance of royalty interests, did not attach as an appurtenance to Sam's land. Sam's undivided royalty interest held in each of the Hoskins and Ray tracts was not necessary to the enjoyment of his land. Sam was not required to own his

tract to receive the royalty interest held in other tracts. This right to receive royalty interest payments from production on other lands in the pool was personal to Sam and appurtenant to the other tracts, but was not appurtenant to Sam's tract. Therefore, Sam's undivided royalty interest held in the Hoskins tract and in the Ray tract did not pass with conveyance of Sam's land. Accordingly, the House parties did not obtain Sam's undivided royalty interest in production on the Hoskins and Ray tracts.

Following this guidance, the general warranty deed executed by Sam to James House passed to House Sam's surface estate in his individual tract, the respective mineral estate (less the severed royalty interest), and Sam's undivided 623.93/2471.8 royalty interest in Sam's tract. The General Warranty Deed did not pass to House Sam's undivided royalty interest in the remainder of the pool, i.e. the Hoskins tract or the Ray tract.

### CONCLUSION

The appellate issues raised to challenge the trial court's declaratory summary judgment are based upon undisputed facts and interpretation of an unambiguous contract. In granting Clifton Hoskins's motion for partial summary judgment, the trial court declared, "the February 6, 1966 Deed from Sam E. Quinn to James L. House conveying the lands of the 623.93–acre Quinn Tract ... did not convey Sam E. Quinn's non-participating royalty interest in the Ray Tract and Hoskins Tract, originally established and described in that certain November 7, 1963 Partition and Royalty Deed...." We conclude this declaration is correct.

The trial court's judgment is affirmed.