

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00239-CV

---

MARK FRIEDMAN, APPELLANT

V.

SECOND CONGRESS, LTD., APPELLEE

---

On Appeal from the 345th District Court
Travis County, Texas
Trial Court No. D-1-GN-19-003283, Honorable Madeleine Connor, Presiding

---

May 18, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This case involves a party demanding reimbursement for, or a refund of, expenses he never paid. The party demanding same is Mark Friedman. He appeals from a final summary judgment awarding to Second Congress, LTD a refund of excess special assessments Second Congress paid prior to selling condominium Unit 46TX to Friedman. At bar, Friedman maintains that he is entitled to the refund because the conveyance contract did not say otherwise and the right to same was an appurtenance to realty transferred via the deed. Furthermore, his receipt of monies another paid would not

unjustly enrich him, he continues. To the extent the trial court decided otherwise by awarding the refund to Second Congress, it purportedly erred. We affirm the trial court's summary judgment.[1]

### Background

When Friedman purchased Unit 46TX at the Austonian, a luxury high-rise condominium building in Austin, for over $5 million, there was ongoing litigation concerning balconies and ledges on the building. As a consequence of the litigation, the Austonian Condominium Association (ACA) had levied special assessments to defray the cost of litigation. Unit owners paid the special assessments on a pro rata basis.

Because Second Congress owned Unit 46TX, among other units, at the time the assessments were first levied, it paid the first assessment of $2,977.20 in October 2015. ACA levied an additional $11,970 in assessments against Second Congress, which the latter also paid. Thereafter, Friedman and Second Congress executed a contract for the sale, which contract we refer to as the Purchase Agreement. At closing, Second Congress paid $4,932 in anticipation of a forthcoming April 2017 special assessment and another $4,932 for an anticipated assessment in July 2017. All told, Second Congress paid $23,938.20 in special assessments related to the balcony litigation. Not all of the funds garnered from the assessments were expended in resolving the balcony litigation. The question became to whom would the pro rata share of the unexpended balance be refunded, Second Congress or Friedman. That share approximated $12,000. ACA expressed its intent to refund all previously paid assessments to the current unit owners.

---

[1] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

That resulted in Second Congress seeking declaratory relief entitling it to the refund of monies it paid. Friedman moved for summary judgment, maintaining that the Purchase Agreement must be construed to mean that the refund was his. This was purportedly so because Second Congress did not reserve a right to receive any refund of the assessments it paid. Instead, the right to the refund allegedly passed to Friedman via the warranty deed Second Congress executed.

Second Congress moved for summary judgment as well, characterizing the right to receive the refund as "a monetary interest," or personalty. As such, they were not conveyed incidentally to conveying the condo, it argued.

### *Issue One: Right to the Refund*

Friedman maintains that the right to receive the refund is appurtenant to the property and runs with the property. He now cites to the condominium declaration in support of his position. Yet, the tenor of his argument below generally consisted of his proposing that Second Congress *could* have reserved its right to receive the refund in the Purchase Agreement, but since it did not, refund of the pre-sale assessments belong to him.[2] He also alluded to the refund being an appurtenance, which allusion appeared in response to the motion for summary judgment of Second Congress. Nevertheless, in mentioning that topic, he said nothing about the condominium declaration and how it purportedly made the refunds an appurtenance. Not until appeal did he urge that position. Moreover, perusal of the summary judgment record discloses that no one included the

---

[2] Such negotiations occurred regarding the return of assessments paid after completion of the sale. That is, Second Congress agreed to place $200,000 in escrow to cover future assessments related to the litigation. Any unexpended balance would be returned to it, according to the Purchase Agreement.

declaration in the evidence presented the trial court. Given that omission, Friedman attached it to his appellate brief as Exhibit B.

A summary judgment "must stand or fall on the grounds expressly presented" to the trial court in the motion or response thereto. *See Adame v. Vista Bank*, No. 07-14-00098-CV, 2014 Tex. App. LEXIS 12227, at *4 (Tex. App.—Amarillo Nov. 10, 2014, no pet.) (mem. op.). Similarly, we must limit our review of the trial court's decision to the record actually before that court. *See id.* Consequently, this standard bars us from considering both the declaration underlying Friedman's current appurtenance argument and the argument itself.

That leaves us with his appurtenance argument raised below. We assume that it may be encompassed within a liberal interpretation of his current position. And, it consisted of postulating that "[a]n obligation to pay assessments to the Austonian Condominium Association (the Association) is an appurtenance to the Unit because it is an obligation that encumbers the Unit" and "[s]imilarly, a right to receive reimbursements of assessment funds that are allocated to the Unit is an appurtenance to the Unit because it's a right that benefits the owner of the Unit." We find that argument wanting for several reasons.

First, no evidence within the current summary judgment record illustrates that "the Association" had an obligation to refund the assessment or "reimburse" anyone. Without an obligation to reimburse, reimbursement can hardly be deemed either a property right or interest that follows ownership of the realty or a benefit attendant to ownership.

4

Second, and more importantly, Friedman's own argument denudes it of viability.[3] This is so because its foundation lies on the concept of "reimbursement." "Reimbursement" denotes repaying someone for monies the individual spent or expenses he paid. A claimant who did neither, such as Friedman, falls outside that scope. As said in *MHI P'ship v. City of League City*, 525 S.W.3d 370 (Tex. App.—Houston [14th] 2017, no pet.), "[p]aying money from the excess-assessment fund to a property owner who did not make any special-assessment payments is not a 'refund.'" *Id.* at 379. Rather, "[i]t is a windfall." *Id.* No less is true for "reimbursement" since both encompass the same element, i.e., recouping what the claimant gave or paid. The *MHI* court continued by then holding that "[t]hough property owners paid special assessments based on their ownership of a property and though the assessment was enforceable by a lien against that property, these facts do not mean that the interest in a potential refund of excess assessment payments is an interest in the property that passes with the land to the current owner of the property." *Id.* "[I]nterests in potential refunds of excess assessments [instead] are personal rights belonging to the ones who actually paid the assessments, without regard to whether they own the properties at the time of the refunds."[4] *Id.* We find no fault in that legal conclusion and its underlying logic.

Again, "reimbursement" means repaying someone for monies the individual spent or expenses he paid. Friedman did neither. And, money being personal property, *see*

---

[3] This same reason also nullifies the viability of his general argument concerning the effect of mentioning nothing in the Purchase Agreement about recouping prior assessments.

[4] Friedman tries to distinguish *MHI* by suggesting that a municipal ordinance and tax (as opposed to a condo assessment) were involved there. Those are distinctions without a difference. Neither circumstance controlled the topic of who was to receive excess monies paid. Instead, the court relied on common sense, persuasive authority from outside Texas, and what the concept of a "refund" means.

*Whiteselle v. Jones*, 39 S.W. 405, 405 (Tex. Civ. App.—San Antonio 1897, no writ), the reimbursement of it did not pass from Second Congress to him via the deed, unless expressly conveyed therein. *See Aery v. Hoskins, Inc.,* 493 S.W.3d 684, 700–01 (Tex. App.—San Antonio 2016, pet. denied) (stating that a general warranty deed does not pass any right held by the grantor that is personal as opposed to real). No one cites us to anything within the deed to the condo (or the Purchase Agreement) expressly addressing the return of special assessments paid prior to the sale.

We overrule Friedman's first issue. That relieves us from addressing his second which concerns unjust enrichment. And, in so overruling the issue, we also affirm the trial court's summary judgment.


Brian Quinn
Chief Justice