**Vacate and Dismiss in part; Affirm in part and Opinion Filed January 2, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-22-00198-CV

**ELDORADO HOMEOWNERS' ASSOCIATION, INC., Appellant**
**V.**
**R. MICHAEL CLOUGH, J. MICHELLE CLOUGH,**
**ADAM FLIERL, NICOLE FLIERL, BILLY FOWLER, SUSAN FOWLER,**
**JACK HOLMES, JACQUI HOLMES, DOUG MONTGOMERY, BECKY**
**MONTGOMERY, RON POWELL, AND CAROL POWELL, Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-03049-2020**

### MEMORANDUM OPINION

Before Chief Justice Burns, Justice Molberg, and Justice Reichek
Opinion by Justice Molberg

#### I. SUMMARY

The Eldorado Homeowners' Association, Inc. (Eldorado) appeals a final judgment on claims brought against Eldorado by appellees, who own properties subject to an "Amended and Restated Declaration of Covenants and Restrictions of the Village of Eldorado, McKinney, Texas" (Declaration). The parties' core dispute is a retaining wall—specifically, the Declaration's effect on the parties' respective rights and responsibilities, if any, regarding the wall's repair and maintenance.

The parties agree a portion of the wall is on the City of McKinney's right-of-way. The wall is pictured below:



In June 2020, appellees sued Eldorado, asserting a breach of contract claim alleging Eldorado breached the Declaration and asserting a claim for declaratory judgment regarding the parties' rights and responsibilities regarding the wall. Appellees named the City of McKinney as a necessary party in the suit.[1] Eldorado and the City appeared and answered. Eldorado's answer included a general denial and affirmative defenses not at issue here. Generally, appellees maintain the Declaration requires Eldorado to repair and maintain the wall, while Eldorado maintains the Declaration places that burden on appellees.

---

[1] The City appeared in the trial court and is named as a necessary party in appellees' pleadings and the final judgment. On appeal, the City has made no appearance, and the parties have not raised any issue regarding the City; thus, we need not decide any issue regarding the City's rights or responsibilities, if any. Unless otherwise indicated, our references to "the parties" refer to Eldorado and appellees.

In March 2021, appellees filed a traditional motion for summary judgment on their declaratory judgment claims and on the liability portion of their breach of contract claims.[2] Eldorado opposed the motion. The trial court granted it. The summary judgment order stated appellees are entitled to "judgment on liability of their breach of contract cause of action" and "judgment on their declaratory judgment cause of action" against Eldorado and stated appellees' "amount of damages and attorneys' fees will be determined at time of trial." The order also awarded appellees the declaratory relief requested in appellees' pleadings and summary judgment motion. That declaratory relief was later incorporated into the final judgment and is described below.

After the summary judgment ruling, the parties and the City filed a joint motion for entry of final judgment and a proposed final judgment. The joint motion reflected that Eldorado intended to appeal the summary judgment ruling and included certain stipulations regarding appellees' damages and attorneys' fees.[3]

---

[2] Appellees did not address the issue of damages or attorneys' fees in their summary judgment motion.

[3] The Joint Motion stated, in part:

Plaintiffs and Eldorado have stipulated and agreed to, if Plaintiffs are entitled to them, the dollar amount of Plaintiffs' damages, dollar amount of Plaintiffs' trial court attorneys' fees, and dollar amount of Plaintiffs' contingent appellate court attorneys' fees as set forth in the proposed final judgment, attached hereto as Exhibit A and incorporated by reference as if set forth fully herein, are fair and reasonable.

Eldorado agrees only as to the form of judgment but disagrees with the content of the judgment as to liability, and, therefore, disagrees with the contents of the judgment as to any finding, explicit or implied, that Plaintiffs are entitled to an award of damages or attorneys' fees. Eldorado agrees only that, if the trial court's finding of liability is upheld on appeal and Plaintiffs are entitled to the award of damages and attorneys' fees, the amounts as set forth in the judgment are fair and reasonable. Eldorado specifically and

Ultimately, and consistent with the proposed judgment's language, the trial court signed a final judgment that incorporated the earlier summary judgment ruling; awarded appellees certain amounts for attorneys' fees, post-judgment interest, and court costs; awarded appellees Doug and Becky Montgomery fifty dollars in damages on their breach of contract claim; and awarded appellees' requested declaratory relief, declaring:

> (1) Eldorado is solely responsible for maintaining, repairing and or replacing the retaining wall at issue, including all costs associated therewith;
>
> (2) [Appellees] are not responsible for maintaining, repairing, or replacing the retaining wall at issue;
>
> (3) [Appellees] have not committed any violation of the [Declaration] in connection with maintaining, repairing, and or replacing the retaining wall at issue;
>
> (4) [Eldorado] may not assess a monetary fine to [appellees] for alleged violations of the [Declaration] in connection with maintaining, repairing and or replacing the retaining wall at issue; and
>
> (5) [Eldorado] may not allocate the retaining wall at issue to [appellees] and may not have the same recorded in the Collin County deed records.[4]

On appeal, Eldorado presents two issues, arguing the trial court erred in (1) granting summary judgment on appellees' declaratory judgment and breach of contract claims and (2) awarding interest, court costs, and attorneys' fees to

---

explicitly reserves its right to appeal the judgment as to liability and Plaintiffs' entitlement to any actual damages and attorneys' fees.

[4] We later refer to these by number, referring in Section III.A.5.a. to the trial court's declarations one through four and in Section III.A.5.b. to the trial court's fifth declaration.

appellees. For the reasons explained below, we sustain Eldorado's first issue only as to the trial court's fifth declaration; overrule Eldorado's two issues in all other respects; vacate the trial court's fifth declaration and dismiss that portion of Eldorado's appeal; and otherwise affirm the trial court's judgment.

## II. ADDITIONAL BACKGROUND

### A. Appellees' Pleadings

In their pleadings, appellees alleged, as to their declaratory judgment claim, that the Declaration "and the rights and obligations of the parties thereto are subject to the Texas Declaratory Judgment Act" and that they seek "a declaration of their rights under Texas law" "as homeowners who have received notices of violations of the [Declaration]." Appellees sought five declarations in their pleadings, including the four we examine in Section III.A.5.a. and the fifth declaration we examine in Section III.A.5.b. In the breach of contract portion of their pleadings, appellees alleged "Eldorado has treated and continues to treat the retaining wall at issue as [a] "common area[,]" that "Eldorado's refusal and failure to maintain, repair, and/or replace both the Common Area and the retaining wall itself is a breach of Eldorado's legal obligation under the [Declaration,]" and "the conduct of Eldorado . . . has caused damages to the Montgomerys in the amount of $50.00[.]" No damages were alleged to have been suffered by any other appellees.

## B.     Parties' Summary Judgment Filings in the Trial Court

In their motion, appellees argued summary judgment was proper on their declaratory judgment claims and on the liability portion[5] of their breach of contract claims because the evidence conclusively established there were no genuine issues of material fact and they were entitled to judgment as a matter of law.  Relying on Articles 4.1 and 4.3 of the Declaration, appellees argued Eldorado was responsible for the maintenance and repair of the wall because it is a "common area" as defined in the Declaration.  Additionally, appellees argued that, with respect to the Montgomerys, Eldorado has the responsibility "to maintain the pathway and/or property" and the right "to do such things as are necessary to keep the pathway and/or property in good repair" because of an easement on the Montgomery's property.  Also with respect to the Montgomerys, appellees argued Eldorado had no legal basis upon which to assess the fifty dollar fine Eldorado assessed against them.

Appellees submitted fourteen exhibits as summary judgment evidence.[6] Eldorado objected to some of this evidence but made no objections to several of appellees' exhibits, including, but not limited to:

- Exhibit A (the Declaration)
- Exhibit C (Eldorado's responses to requests for admissions),

---

[5] Appellees' motion stated that they "reserve the right to prove the amount of their damages and attorney's fees at a later date and/or at the time of trial."

[6] The bulleted lists in this paragraph list ten of appellees' fourteen summary judgment exhibits.  Not listed are the other four exhibits, which consisted of Exhibits B, E, and G, to which Eldorado objected, and Exhibit H, to which Eldorado did not object.  Because we have not considered Exhibits B, E, and G in reaching our conclusion on Eldorado's first issue, we have not further described them here.  We also do not describe Exhibit H except to note that it contains Eldorado's March 10, 2020 letter we discuss below.

–6–

- Exhibit D (Eldorado's responses to requests for production),
- Exhibit F (Eldorado letter dated Nov. 15, 2007; two bids to Eldorado dated Oct. 29, 2007; two Nov. 6, 2006 photographs of a retaining wall)

Appellees also submitted affidavits and attachments from six appellees:

- Exhibit I (Douglas Montgomery affidavit with attachments)
- Exhibit J (Billy Fowler affidavit and attachments
- Exhibit K (Jack Holmes affidavit with attachments),
- Exhibit L (Ron Powell affidavit with attachments),
- Exhibit M (Adam Flierl affidavit with attachments), and
- Exhibit N (R. Michael Clough affidavit with attachments).

While Eldorado made some general assertions about appellees' affidavits and attachments, Eldorado's only specific objections about such items concerned exhibit I-3 (exhibit 3 to Douglas Montgomery's affidavit), unspecified exhibits Eldorado described as "letters written by various Plaintiffs attached to their affidavits," and a portion of Billy Fowler's affidavit.[7] Although certain differences exist in the text of the affidavits, the affidavits of appellees share some common traits. Each state:

---

[7] As to appellees' affidavits and attachments, Eldorado's summary judgment response stated as follows:

> [Eldorado] objects to unauthenticated and hearsay documents attached to the affidavits attached to [appellees'] Motion. Specifically including Exhibit 3, to Doug Montgomery's affidavit which appears to be random screen shots [which] do not show who is taking them, who provided the information . . . , if they are an accurate copy, whose account they are for, etc. This is hearsay and hearsay within hearsay. These objections also pertain to letters written by various [appellees] attached to their affidavits, which constitute hearsay.

> Defendant objects to the conclusory statements provided in the affidavits such as Mr. Billy Fowler's statement "I am also aware that Eldorado planted screening foliage around the retaining wall as well as vines located on or around the wall." This is a conclusory statement without any context of how [Fowler] has personal knowledge as to this statement. It is also not relevant to the issues before the Court.

In deciding Eldorado's first issue, we have not considered Exhibit I-3 (Exhibit 3 to Doug Montgomery's affidavit), letters written by various appellees attached to their affidavits, or the portion of appellee Fowler's affidavit quoted above.

- affiant is over twenty-one years of age, is competent to make the affidavit, is not disqualified by law from making it, and has personal knowledge of the facts therein, which are true and correct;

- affiant and the other appellee with the same surname are plaintiffs in this lawsuit; are the owners of a particular residence on Augusta Drive in McKinney, Texas; and are members of the Village of Eldorado community (the "Community");[8] and

- Eldorado is "the homeowners' association that controls and governs the Community.

Additionally, three of the affidavits include various attachments that state:

- On certain dates, Eldorado sent certain letters to affiant stating Eldorado observed certain "violation(s) at the property[,]" namely, the "[r]ear retaining wall facing Country Club needs to be repaired" and that such "condition, use or activity is not in conformance" with "Article 11, Section 11.2.1 which states all [or] in part, 'Each owner, at the owner's expense, must maintain all improvements on the lot including but not limited to the dwelling, fences, sidewalks and driveways.'"

Some of the affidavits contain additional information as well. For example:

- Appellee Billy Fowler's and appellee Jack Holmes' affidavits each state that on certain dates, Eldorado sent him a letter demanding that he make repairs to the retaining wall at his expense, which he disputed, and that attached to his affidavit was a true and correct copy of the letter. The letters, which are in the record, are addressed to affiant and other appellees with the same surname "regarding the repair or replacement work that is needed to [the] retaining wall that faces Country Club," list addresses for the six homes "affected by the wall,"[9] and state,

> [Eldorado] maintains the landscaping between the wall and street but the owners are responsible for maintaining

---

[8] For the Flierl and Clough appellees, a similar statement is provided, except that the affidavits state that the same-named appellees are trustees of a particular trust that owns the residence.

[9] The addresses are all on Augusta Drive in McKinney, Texas and contain numbers 2105, 2109, 2111, 2113, 2115, and 2117, the same addresses listed in appellees' affidavits.

–8–

the fences and retaining walls at the rear of your property. [Eldorado] did repair the wall in 2007 but also notified the owners that own the lots along this retaining wall in November of 2007 that [Eldorado] would not be responsible to fix, repair or replace the wall in the future."

- Appellee Billy Fowler and appellee Jack Holmes also assert, "I do not have direct access to the retaining wall from my Property. Also, every member of the Community has the same access to the retaining wall that I have."

- Appellee Billy Fowler's affidavit asserts Eldorado sent him a March 10, 2020 letter, a true and correct copy of which was attached to his affidavit, in which Eldorado stated, "[O]ur intent is to formally allocate the affected area to each lot owner and to further have the same recorded in the county deed records.'"

- Appellee Douglas Montgomery's affidavit also stated, "Unbeknownst to me . . . Eldorado had already assessed and charged my homeowner association membership account a $50.00 fine" and that he "unknowingly paid the $50.00 fine as Eldorado included the fine in the annual fee assessment charged to my homeowner association membership account in January 2020."

In Eldorado's summary judgment response, Eldorado argued it did not breach any contract with appellees and appellees were not entitled to declaratory judgment. Eldorado made alternative arguments regarding the Declaration's ambiguity[10] but primarily argued that the Declaration is not ambiguous; Eldorado did not breach the Declaration; appellees are responsible for the wall; and Eldorado's actions were justified under the Declaration. As support for its arguments, Eldorado cited Articles 1.11, 10.2.2, 10.3., 11.1, 11.2, and 11.22 and presented evidence consisting of an

---

[10] Eldorado argued the Declaration is not ambiguous but stated that if it were determined to be ambiguous, the court ought to then consider parol evidence submitted in its exhibit A-3, which consisted of a November 15, 2006 letter and attachment from the City.

unsworn declaration from Rose Hill, the previous property manager for Eldorado and current Association Manager for a company identified as Eldorado's current property management company. Ms. Hill's unsworn declaration, which was made under penalty of perjury, stated she is an authorized records custodian for Eldorado. Attached to Ms. Hill's unsworn declaration are five attachments, which she described as exact duplicates of the originals of emails between herself and appellees, certain letters dated in the years 2006 or 2007, and the Declaration, and which she described in terms consistent with the business records exception to the hearsay rule.[11]

## C. Declaration's Terms

The Declaration, which both parties rely on, is a forty-page document with a table of contents, a preamble, sixteen articles, and three exhibits. Below, we include the text of the articles to or upon which the parties referred or relied in the trial court or in this Court:

ARTICLE 1 - DEFINITIONS

. . . .

1.7. "Common Area" means portions of real property and improvements thereon that are owned and/or maintained by the Association, as described in Article 4 below. Portions of the common area may be allocated to certain lots as limited common area.

. . . .

1.11. "Lot" means a portion of the Property intended for independent ownership, on which there is or will be constructed a dwelling, as shown on the Plat. As a defined term, "lot" does not refer to common areas, even if platted and numbered as a lot. Where the context indicates or requires, "lot" includes all improvements thereon and any portion of a right-of-way that customarily is used exclusively by and in connection with the lot.

---

[11] *See* TEX. R. EVID. 803(6).

–10–

. . . .

## ARTICLE 4 - COMMON AREA

4.1.     OWNERSHIP.  The designation of real property as a common area is determined by the plats, by the ownership of the property in those instances where the Association is the owner, and by this [Declaration].  The original Developer may have installed, constructed, or authorized certain improvements on common areas in connection with the initial development of the Village of Eldorado where the cost thereof was not a common expense of the Association.  Thereafter, all costs attributable to common areas, including maintenance, property taxes, insurance, and enhancements, have been automatically the responsibility of the Association, regardless of the nature of title to the common areas, unless:  (a) the improvements are located on land not owned by the Association (excepting the islands in the public streets) or subject to a specific recorded easement in favor of the Association; or (b) this Declaration elsewhere provides for a different allocation for a specific common area.

. . . .

4.3.     COMPONENTS. The common area of the Village of Eldorado consists of the following components on or adjacent to the Property, even if located on a lot or a public right-of-way:

a.  All of the Property, save and except the house Lots.

b. The land described in Exhibit A as common area and all improvements thereon.

c.  Any area shown on the plats as common area or an area to be maintained by the Association.

d. The formal entrances to the Village of Eldorado, including (if any) the signage, landscaping, electrical and water installations, planter boxes and fencing on both sides of the junctions of Eldorado Parkway and Country Club Drive, and U.S. Route 75 and Country Club Drive.

e. The continuous screening walls and streetscape along Forest Hills at Forest Court and along Country Club Drive at Club Oaks Court.

f.  The grounds between the country club property (Golf Course Hole #11) and Country Club Drive and between the country club property (Hole #11) and U.S. Route 75.

g. The grounds between the country club property (Golf Course Holes 12, 15 and 16) between and on both sides of the lakes and the platted lots.

h. The grounds under and adjacent to the three largest lakes and the dams creating those lakes; provided, however, that the Country Club also owns some of this land.

i.  Landscaping on islands on Augusta, Brookside Lane, Clublake Trail, Club Oaks Court, Colonial Circle, Country Club Drive, Fairway Ridge, Forest Court, Forest Creek, Forest Hills, Hillcrest Court, Hogans Hill, Lakeshore Court, Lakeside Drive, Roundrock, St. Andrews, and Wind Ridge to the extent they are not maintained by the city.

j. Any modification, replacement, or addition to any of the above-described areas and improvements.

k. Personal property owned by the Association, such as books and records, office equipment, supplies, signs and holiday decorations.

4.4 LIMITED COMMON AREA.  If it is in the best interest of [Eldorado], a portion of the common area may be . . . allocated to one or more lots for their sole and exclusive use, as a limited common

area, whether or not the area is so designated on the plat. Inherent in the limiting of a common area, maintenance of the limited common area becomes the responsibility of the lot owner, rather than [Eldorado]. For examples: a common area that is difficult to access and maintain except via the adjoining house lot or a common area that benefits and is used by, or benefits, only one or two lot owners might be a [candidate] for limited common areas.

. . . .

### ARTICLE 6 – CONSTRUCTION AND USE RESTRICTIONS

. . . .

6.12. FENCES. This Section is subject to the Architectural Reviewer's right to adopt additional or different specifications for construction or reconstruction of fences. The height of fences must be between 4 feet and 6 feet 8 inches. Fences must be made of iron, masonry, wood, or other Architectural Reviewer-approved material. Any portion of a fence that faces a street, alley, or common area must have a "finished side" appearance. Fences in the rear or side . . . of golf course lots must be of iron, must extend from the golf course side of the lot to the rear or closest side of the home so as to not block or interfere with a neighbor's view of the golf course, and must be of a style consistent with those of neighboring homes. Retaining walls must be constructed entirely with Architectural Reviewer-approved materials, however railroad ties may not be used to replace any existing wall or erect any new wall. Fences may not be constructed between a dwelling's front building line and the street. The use of barbed wire and chain link fencing is prohibited. The use or application of a stain that cures in a solid color or paint is prohibited.

Wood fences may be left in their natural state. No wood fence may be stained to alter the fence color from a natural wood color. Without prior approval of the Architectural Reviewer, clear sealants may be applied.

. . . .

### ARTICLE 10 - ENFORCING THE DOCUMENTS

. . . .

10.2.2. Fine. The Association may levy reasonable charges, as an individual assessment, against an owner and his lot if the owner or resident, or the owner or resident's family, guests, employees, agents, or contractors violate a provision of the Governing Documents. Fines may be levied for each act of violation or for each day a violation continues, and does not constitute a waiver or discharge of the owner's obligations under the Governing Documents.

. . . .

10.5 RECOVERY OF COSTS. The costs of curing or abating a violation are at the expense of the owner or other person responsible for the violation. If legal assistance is obtained to enforce any provision of the Governing Documents,[12] or in any legal proceeding (whether or not suit is brought) for damages or for the enforcement of the Governing Documents or the restraint of violations of the Governing Documents, the prevailing party is entitled to recover from the non-prevailing party all reasonable and necessary costs incurred by it in such action, including reasonable attorneys' fees.

---

[12] Article 1.10 lists the Declaration within its definition of "Governing Documents."

## ARTICLE 11 - MAINTENANCE AND REPAIR OBLIGATIONS

11.1. ASSOCIATION MAINTAINS. The Association's maintenance obligations will be discharged when and how the board deems appropriate. The Association maintains, repairs, and replaces, as a common expense, the portions of the Property listed below, regardless of whether the portions are on lots or common areas.

> a. The common areas.

> b. Any real and personal property owned by the Association but which is not a common area, such as a house lot owned by the Association.

> c. Any property adjacent to the Village of Eldorado if maintenance of same is deemed to be in the best interests of the Association, and if not prohibited by the owner or operator of said property.

> d. Any area, item, easement, or service - the maintenance of which is assigned to the Association by this, or any previous, Declaration or Amended or Restated Declaration or by plat.

11.2. OWNER RESPONSIBILITY. Every owner has the following responsibilities and obligations for the maintenance, repair, and replacement of the Property, subject to the architectural control requirements of Article 5 and the use restrictions of Article 6.

. . . .

11.2.2. Yard Maintenance. Each owner, at the owner's expense, must maintain the yards on his lot at a level, to a standard, and with an appearance that is commensurate with the neighborhood. "Yards" means all parts of the lot other than the dwelling, including fenced and unfenced portions of the lot and also include any land or parkways between the boundary of the platted lot and: (a) the curb of any adjacent paved street immediately in front of, to the side of, or to the rear of the platted lot; or (b) the land or parkways between the platted lot and any of the lakes or the golf course that is not maintained by either the Association or the Country Club.

Specifically, each owner must:

> a. Maintain an attractive ground cover or lawn on all yards visible from a street, common areas or the golf course.

> b. Edge the street curbs and all sidewalks at regular intervals.

> c. Mow the lawns and grounds at regular intervals.

> d. Prevent lawn weeds or grass from exceeding 6 inches in height

> e. Not plant vegetable gardens that are visible from a street

> f. Maintain an attractive appearance for shrubs and trees visible from a street, common areas or the golf course.

> g. Replace plant material, as needed, to maintain the minimum landscaping requirements in the "Blue Book" as it is amended from time to time.

# III. ISSUES AND ANALYSIS

## A.     Summary Judgment

### 1.      Summary of Eldorado's Arguments on Appeal

In its first issue, Eldorado argues the trial court erred in granting summary judgment on appellees' declaratory judgment and breach of contract claims because:

1.a.    [Appellees]—not [Eldorado]—are responsible for maintaining and repairing the retaining wall at the rear of their property under the unambiguous provisions of the Declaration.

1.b.    [Appellees] failed to maintain or repair the retaining wall in violation of the restrictive covenants and [Eldorado] was entitled to exercise its rights to remedy violations, including sending violation notices and imposing fines.

1.c.    Declaratory judgment [number five] directly conflicts with section 4.4 of the Declaration which gives [Eldorado] discretion to allocate limited common areas if in the best interest of the Association.

1.d.    [Eldorado's] Declaration is not ambiguous, and the trial court erred in considering [Appellees'] extrinsic evidence.

1.e.    In the alternative, if this Court finds that the Declaration is ambiguous, the trial court's granting of summary judgment was improper.

Eldorado's five reasons cover three main topics:  (1) the Declaration's ambiguity, if any, (2) appellee's summary judgment evidence, and (3) the propriety of summary judgment.   We address these topics after first outlining applicable review standards.

### 2.     Review Standards

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving

–14–

any doubts in the nonmovant's favor." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). This includes declaratory judgments granted by summary judgment. *See Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015) ("A declaratory judgment granted on a traditional motion for summary judgment is reviewed de novo."); *see also Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 690–91 (Tex. App.—San Antonio 2016, pet. denied) ("A declaratory judgment rendered by summary judgment is reviewed under the same standards that govern summary judgments generally.").

A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant does so, the burden then shifts to the nonmovant to come forward with competent controverting evidence sufficient to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

The meaning of an unambiguous contract is a question of law we review de novo. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). Whether a

contract is ambiguous is a question of law for the court. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

"Our primary concern when interpreting a contract is to ascertain and give effect to the parties' intent as that intent is expressed in the contract." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). "To discern this intent, we 'examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.'" *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original)).

"Like all other considerations beyond the contract's language and structure, parties' 'disagreement' about their intent is irrelevant to whether that text is ambiguous." *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, No. 22-0901, 2023 WL 7238791, at *1 (Tex. Nov. 3, 2023).[13] Ambiguity does not exist simply because the parties offer competing theories about how to read the contract's text. *See id.*; *see also Seagull Energy E & P*, 207 S.W.3d at 345 ("[A] contract is not ambiguous merely because the parties disagree on its meaning."). But if multiple interpretations do exist and a court cannot choose among them, the text is ambiguous, and there is

---

[13] As the Court recognized, "Parties who find themselves in a business dispute can always claim an extratextual 'intent' that would serve a current litigation position." *U.S. Polyco*, 2023 WL 7238791, at *1.

no choice but to leave the question to a jury. *U.S. Polyco*, 2023 WL 7238791, at *1;

*see also Seagull Energy E & P*, 207 S.W.3d at 345 ("An ambiguity exists only if the

contract language is susceptible to two or more reasonable interpretations.").  As the

supreme court recently reiterated,

> Our "primary objective" when construing private legal instruments
> . . . "is to ascertain and give effect to the parties' intent as expressed in
> the instrument." [*URI*, 543 S.W.3d at 763]. "In the usual case, the
> instrument alone will be deemed to express the intention of the parties
> for it is objective, not subjective, intent that controls." *City of Pinehurst
> v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).
> Thus, when a contract is unambiguous, it will "be enforced as written
> without considering extrinsic evidence bearing on the parties'
> subjective intent." *Devon Energy Prod. Co. v. Sheppard*, 668 S.W.3d
> 332, 343 (Tex. 2023).

*U.S. Polyco*, 2023 WL 7238791, at *3.

Context[14] is a permissible indicator of meaning, *id*. at *5, and "courts must

strive to 'harmonize and give effect to all the provisions of the contract by analyzing

the provisions with reference to the whole agreement.'"  *Id*. (quoting *Frost Nat'l

Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005)).

"The task of harmonizing contracts entails reconciling otherwise conflicting

contractual provisions[,]" and "does not authorize courts to ensure that every

provision comports with some grander theme or purpose, particularly when the

parties have not said in the contract which purpose matters most or that everything

---

[14] "In its most relevant and legal sense, 'context' is simply the surrounding words and structure of the operative text[,] [not an] alternative and broader meaning of context [which] would smuggle in the many extratextual, extrinsic, and subjective considerations that we have long rejected in contract interpretation." *U.S. Polyco*, 2023 WL 7238791, at *6 n.3 (citations omitted).

else in the contract should be read subject to that purpose." *U.S. Polyco*, 2023 WL 7238791, at *6.

In *Tarr*, 556 S.W.3d at 280, the supreme court stated,

> "[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Whether a restrictive covenant is ambiguous is a question of law for the court to decide by looking at "the covenants as a whole in light of the circumstances present when the parties entered the agreement." *Id.*; *see also Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). "Like a contract, covenants are 'unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Pilarcik*, 966 S.W.2d at 478 (alteration in original) (first quoting *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); and then citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). However, "if the covenants are susceptible to more than one reasonable interpretation, they are ambiguous." *Id.* "Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous." *Buckner*, 133 S.W.3d at 297.[15]

### 3. Declaration's Ambiguity, If Any

We turn first to the topic of the Declaration's ambiguity, if any, which Eldorado discusses in its arguments 1.d. and 1.e. Throughout the case, both parties have argued the contract is not ambiguous, but in its brief on appeal, Eldorado also argues, alternatively, that because patent ambiguity can be raised for the first time on appeal, if we conclude the Declaration is ambiguous, we must also conclude summary judgment was improper. Appellees dispute that the contract is ambiguous and correctly note that Eldorado does not point to any sections of the Declaration to

---

[15] *See Buckner v. Lakes of Somerset Homeowners Ass'n*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied).

support any ambiguity and does not explain how any ambiguous language in the Declaration creates a fact issue.

In light of our analysis below, we conclude the Declaration can be given a definite or certain legal meaning and is therefore unambiguous as a matter of law. *See Tarr*, 556 S.W.3d at 280 ("Like a contract, covenants are 'unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.") (quoting *Pilarcik*, 966 S.W.2d at 478 (alteration in original)).

### 4.    Alleged Error Regarding Evidence

The appellate record reflects no ruling from the trial court on Eldorado's objections to appellees' summary judgment evidence.  On appeal, in connection with its argument 1.d., Eldorado argues the trial court "impliedly overruled" its objections by granting summary judgment and argues the trial court erred in considering what Eldorado refers to as appellees' extrinsic evidence.  For purposes of this appeal, we assume, but do not decide, that Eldorado's complaints regarding appellees' summary judgment evidence are properly before us.  *See* TEX. R. APP. P. 33.1; *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (reiterating applicable standards).

Under the circumstances, however, we need not consider such complaints, because as we have indicated, we resolve Eldorado's first issue without considering the summary judgment evidence Eldorado objected to in the trial court and complains about on appeal.  *See Flores v. Chasco, Inc.*, No. 05-14-00531-CV, 2016

–19–

WL 4371964, at *4 (Tex. App.—Dallas Aug. 16, 2016, no pet.) (mem. op.) ("We have resolved the issue of whether summary judgment . . . was proper without considering [an objected-to] affidavit. Because [the] summary judgment evidence was sufficient without [that] affidavit, we need not consider this portion of [appellant's] first issue."); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (court does not review all objections to summary judgment evidence, only those with bearing on outcome)); *see also* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *id*. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").

### 5.    Propriety of Summary Judgment

Next, we reach the essence of Eldorado's first issue: did the trial court err in granting summary judgment for appellees? We consider this in two parts: first, we consider any error in granting summary judgment on appellees' request for declarations one through four and on the liability portion of the Montgomerys' breach of contract claims; and second, we consider any error in granting summary judgment on appellees' request for the fifth declaration.

### a. Declarations 1–4 and Liability Portion of Montgomerys' Breach of Contract Claims

We first consider whether the trial court erred in granting summary judgment on appellees' request for declarations one through four and on the liability portion of the Montgomerys' breach of contract claims. We conclude it did not.

"A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). "[A] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (*quoting Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)). "[I]n order '[t]o constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute.'" *Id.* (*quoting Beadle*, 907 S.W.2d at 467).

Appellees moved for traditional summary judgment on their declaratory judgment claims and on the liability portion of their breach of contract claims by arguing that the evidence conclusively established there were no genuine issues of material fact and they were entitled to judgment as a matter of law. While the parties disagree about their obligations under it, the parties agree and do not dispute that the

Declaration constitutes a valid contract, which leaves, for present purposes, only a dispute regarding Eldorado's alleged obligation to repair and maintain the wall and its breach of the Declaration in failing to do so.

On appeal, the parties present the same basic arguments they presented below and cite many of the same Declaration terms discussed in their summary judgment briefing, with one exception—Article 6.12—which Eldorado cites for the first time on appeal and which does not alter our conclusion.[16]

At its most basic level, the parties' central dispute is whether the retaining wall is a "common area" under the Declaration, with Eldorado arguing it is not, and appellees arguing it is.

We agree with appellees. According to Article 4.3,[17] "[a]ll of the Property, save and except the house Lots[,]" constitute "[t]he common area." The wall is not a "lot" because the wall is not "intended for independent ownership, on which there is or will be constructed a dwelling."[18] Moreover, the wall is a "common area" under

---

[16] The only portion of Article 6.12 having to do with retaining walls states, "Retaining walls must be constructed entirely with Architectural Reviewer-approved materials, however railroad ties may not be used to replace any existing wall or erect any new wall."

[17] Article 4.3 of the Declaration states, in part, "The common area of the Village of Eldorado consists of the following components on or adjacent to the Property, even if located on a lot or a public right-of-way:  a. All of the Property, save and except the house Lots."

[18] Article 1.11 defines "[l]ot" as "a portion of the Property intended for independent ownership, on which there is or will be constructed a dwelling, as shown on the Plat" and states, "[a]s a defined term, 'lot' does not refer to common areas, even if platted and numbered as a lot. Where the context indicates or requires, 'lot' includes all improvements thereon and any portion of a right-of-way that customarily is used exclusively by and in connection with the lot."

Article 1.7[19] because Eldorado maintains the area upon which the wall sits.[20]  We are not persuaded by Eldorado's reliance on Article 1.11,[21] as there is no evidence the wall "customarily is used exclusively by and in connection with" the lot of any of the appellees, or by Eldorado's reliance on Article 11.22,[22] considering Eldorado's admissions regarding its maintenance of the area.

We conclude appellees met their burden under rule 166a(c) and that the trial court did not err in granting summary judgment on appellees' request for declarations one through four and on the liability portion of the Montgomerys' breach of contract claims.

---

[19] Declaration Article 1.7 defines "common area" as "portions of real property and improvements thereon that are owned and/or maintained by [Eldorado], as described in Article 4 below.  Portions of the common area may be allocated to certain lots as limited common area."  The allocation process is described in Article 4.4, which we discuss in the next section as it relates to the trial court's fifth declaration.

[20] Eldorado admits "a portion of the Retaining Wall is located within a right-of-way that is controlled by McKinney" and admits that, for the area "from the south side of the Retaining wall to the curb of Country Club Drive[.]" Eldorado "assumed landscaping maintenance of the area[,]" "pays for the landscaping maintenance of the area" and "pays the water bill to McKinney for the water used in the landscaping maintenance of the area."

[21] Article 1.11 states, in part, "Where the context indicates or requires, 'lot' includes all improvements thereon and any portion of a right-of-way that customarily is used exclusively by and in connection with the lot."

[22] Article 11.22 states, in part,

> "Yard Maintenance. Each owner, at the owner's expense, must maintain the yards on his lot at a level, to a standard, and with an appearance that is commensurate with the neighborhood. 'Yards' means all parts of the lot other than the dwelling . . . and also include any land or parkways between the boundary of the platted lot and: (a) the curb of any adjacent paved street immediately in front of, to the side of, or to the rear of the platted lot; or (b) the land or parkways between the platted lot and any of the lakes or the golf course that is not maintained by either the Association or the Country Club."

### b. Fifth Declaration

In argument 1.c. of its first issue, Eldorado argues the trial court erred in granting summary judgment on appellees' request for the fifth declaration because the trial court's fifth declaration constituted an advisory opinion and directly conflicts with Article 4.4 of the Declaration. Without addressing any perceived conflict with Article 4.4 of the Declaration, we agree with appellees' view that the trial court's fifth declaration constitutes an advisory opinion.

The trial court's fifth declaration states, "[Eldorado] may not allocate the retaining wall at issue to [appellees] and may not have the same recorded in the Collin County deed records." Article 4.4 of the Declaration states:

> 4.4 LIMITED COMMON AREA. If it is in the best interest of [Eldorado], a portion of the common area may be . . . allocated to one or more lots for their sole and exclusive use, as a limited common area, whether or not the area is so designated on the plat. Inherent in the limiting of a common area, maintenance of the limited common area becomes the responsibility of the lot owner, rather than [Eldorado]. For examples: a common area that is difficult to access and maintain except via the adjoining house lot or a common area that benefits and is used by, or benefits, only one or two lot owners might be a [candidate] for limited common areas.

As we stated earlier, "[A] declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought[,]" and "in order '[t]o constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a

–24–

theoretical dispute.'"  *Lynch*, 595 S.W.3d at 685 (*quoting Beadle*, 907 S.W.2d at 467).

Appellees sought, and the trial court granted, a declaration stating that "[Eldorado] may not allocate the retaining wall at issue to [appellees] and may not have the same recorded in the Collin County deed records."  But the record contains no summary judgment evidence showing that Eldorado had, in fact, taken either of these steps.

At oral argument, when asked whether Eldorado had allocated the wall to appellees' lots as a limited common area, Eldorado's counsel answered, "They have not."  Appellees' counsel did not dispute this but argued Eldorado's prior "threat" to do so[23] was enough to present a justiciable controversy.

We disagree.  Under our Constitution, the judicial power does not embrace the giving of advisory opinions.  *See Correa v. First Ct. of Appeals*, 795 S.W.2d 704, 705 (Tex. 1990) (the "judicial power does not embrace the giving of advisory opinions") (quoting *Firemen's Ins. Co. of Newark, N. J. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968), *superseded on other grounds by constitutional amendment as recognized in Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997)).  The Declaratory Judgments Act "gives the court no power to pass upon

---

[23] The "threat" refers to a March 10, 2020 letter from Eldorado to appellee Doug Montgomery regarding "who is responsible to maintain the retaining wall."  The letter stated the "intent" of the Eldorado Board of Directors "is to formally allocate the affected area to each lot owner and to further have the same recorded in the county deed records."  The letter is part of appellees' Exhibit H, to which Eldorado did not object.

hypothetical or contingent situations, or determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Burch*, 442 S.W.2d at 333 (citing *California Prods., Inc. v. Puretex Lemon Juice, Inc.*, 334 S.W.2d 780 (Tex. 1960)); *see Harris Cnty. Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.3d 133, 139 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not essential to the decision of an actual controversy, although such questions may in the future require adjudication.").

Based on the record before us, we conclude the trial court erred in granting summary judgment as to the fifth declaration because appellees presented no justiciable controversy with respect to Article 4.4. Because appellant had not allocated the wall to appellees' lots as a limited common area, any issue regarding a future and hypothetical allocation was not yet ripe, and the trial court's fifth declaration functioned merely as an advisory opinion the trial court lacked the power to give. *See Morath v. The Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 848 (Tex. 2016) ("[T]he ripeness doctrine concerns whether there is sufficient development of the facts and issues to ensure that the court's judgment is not based on contingent or uncertain events.") (citing *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001)); *Harris Cnty. Mun. Util. Dist. No. 156*, 274 S.W.3d at 139 (declaratory judgment action does not vest a court with the power to pass upon hypothetical or

–26–

contingent situations, or to determine questions not essential to the decision of an actual controversy, although such questions may in the future require adjudication). We vacate the trial court's fifth declaration.

### 6. Conclusion on First Issue

We sustain Eldorado's first issue only as to the trial court's fifth declaration and overrule Eldorado's first issue in all other respects.

### B. Awards for Interest, Court Costs, and Attorneys' Fees

In its second issue, Eldorado argues, "The trial court erred in award[ing] [appellees] attorney[s'] fees, interest, and court costs." The final judgment's language awarding appellees' post-judgment interest, court costs, and attorneys' fees tracked the same language the parties and the City included in the proposed judgment that accompanied their joint motion for entry of final judgment.[24] The final

---

[24] Specifically, the final judgment stated in pertinent part, "[T]he judgment rendered herein shall bear post-judgment interest at the rate of five percent (5%) per annum until paid[,]" "that [appellees] have and recover from [Eldorado] all costs of court[,]" and that appellees recover from and against Eldorado the following sums for attorneys' fees:

> [T]he sum of $35,000.00, which sum represents reasonable and necessary attorneys' fees incurred in the trial of this cause[,] . . . .

> [T]he additional sum of $20,000.00 ($15,000.00 for [appellees'] representation through the briefing phrase in the Court of Appeals and $5,000.00 for [appellees'] representation through oral argument in the Court of Appeals) as reasonable and necessary attorneys' fees in the event of an appeal by [Eldorado] of this matter to the Court of Appeals and [appellees] prevail[,] . . . .

> [T]he additional sum of $7,500.00 as reasonable and necessary attorneys' fees in the event [Eldorado] files an Application for Petition for Review to the Supreme Court of Texas regarding this matter and [appellees] prevail, an additional sum of $9,500.00 as reasonable and necessary attorneys' fees in the event that the Texas Supreme Court requires briefing by the parties, and [appellees] prevail, and an additional sum of $5,000.00 as reasonable

–27–

judgment did not specify a particular basis for the attorneys' fees award, but in their pleadings, appellees sought fees under civil practice and remedies code § 37.009, Article 10.5 of the Declaration,[25] and property code § 5.006.

We first consider Eldorado's arguments regarding post-judgment interest and court costs. We review the trial court's decision on both matters for an abuse of discretion. *DeGroot v. DeGroot*, 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.) (abuse of discretion standard for review of pre- and post-judgment interest); *Mut. First, LLC, Series 77 v. Butler*, No. 05-15-00578-CV, 2016 WL 3946913, at *4 (Tex. App.—Dallas July 19, 2016, no pet.) (mem. op.) (abuse of discretion standard for review of trial court's decision regarding whether to award court costs).

On appeal, Eldorado's only arguments about the trial court's alleged error in awarding interest and court costs are limited to a single sentence in its statement of issues and a passing reference to costs in its summary of argument.[26] Under these circumstances, we conclude Eldorado has inadequately briefed the issue of whether the trial court erred in awarding appellees interest and court costs because Eldorado has neither analyzed the issue or evidence nor provided any citations to the record

and necessary attorneys' fees in the event the Texas Supreme Court grants oral argument of the parties and [appellees] prevail.

[25] We include the text of Article 10.5 in Section II.C. above.

[26] In the second issue listed in its statement of issues, Eldorado stated, "The trial court erred in award[ing] [appellees] attorney[s'] fees, interest, and court costs." In its summary of argument, Eldorado stated, "[B]ecause [appellees] were not entitled to summary judgment, the trial court erred in awarding them damages, costs, and attorney[s'] fees."

or legal authorities to support its argument. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Hamilton v. Farmers Tex. Cnty. Mut. Ins. Co.*, 328 S.W.3d 664, 668 (Tex. App.—Dallas 2010, no pet.) (argument was inadequately briefed and presented nothing to review when it consisted of conclusions and did not provide proper, meaningful analysis in support of appellant's contentions and did not cite to authority or to record).

Next, we consider Eldorado's argument that the trial court erred in awarding appellees attorneys' fees. Generally, we review a trial court's award of attorneys' fees under an abuse of discretion standard. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). Here, however, the issue is whether a legal basis exists for the recovery of attorneys' fees, which is a question of law that we review de novo. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012) (appellate courts review questions of law de novo); *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (availability of attorneys' fees under a particular statute is question of law); *In re M.M.*, No. 05-21-00992-CV, 2023 WL 179810, at *10 (Tex. App.—Dallas Jan. 13, 2023, no pet.) (mem. op.) ("Though we generally review a trial court's award of attorney's fees under an abuse of discretion standard, the issue of whether Texas law recognizes a basis for the recovery of attorneys' fees is a question of law we review de novo.").

On appeal, Eldorado argues we should reverse the judgment awarding appellees' attorneys' fees because: (1) appellees "did not segregate their fees between recoverable and nonrecoverable claims or parties[,]" (2) fees cannot be recovered under civil practice and remedies code § 37.009[27] because "[t]he Final Judgment does not make any finding that the fees are 'equitable' or 'just' as required for an award under the Declaratory Judgment Act[,]" and (3) appellees are not entitled to fees under civil practice and remedies code § 37.009, Article 10.5 of the Declaration, or property code § 5.006[28] because the trial court erred in granting summary judgment on appellees' claims.

We turn first to Eldorado's failure-to-segregate argument. Although Eldorado presents only minimal briefing on this, even if we assume its briefing is adequate, as we do, we conclude Eldorado failed to preserve error on this issue by failing to raise it in the trial court. *See* TEX. R. APP. P. 33.1(a); *Green Int'l v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("A failure to segregate attorneys' fees in a case containing multiple causes of action, only some of which entitle the recovery of attorneys' fees, can result in the recovery of zero attorneys' fees" but "if no one objects to the fact that the attorneys' fees are not segregated as to specific claims, then the objection is

---

[27] Texas Civil Practice and Remedies Code § 37.009 provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009.

[28] Texas Property Code § 5.006 provides, in part, "(a) In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.") TEX. PROP. CODE § 5.006(a).

waived"); *Rhodes v. Kelly*, No. 05-16-00888-CV, 2017 WL 2774452, at *14 (Tex. App.—Dallas 2017, pet. denied) (mem. op.) (party waived error regarding segregation of fees by failing to address issue in motion for new trial or other trial court proceedings).[29]

Next, we consider Eldorado's argument that fees cannot be recovered under civil practice and remedies code § 37.009 because "[t]he Final Judgment does not make any finding that the fees are 'equitable' or 'just' as required for an award under the Declaratory Judgment Act." We disagree with Eldorado for two reasons.

First, on the record before us, we conclude the invited error doctrine estops Eldorado from making this complaint on appeal. In *Northeast Texas Motor Lines, Inc. v. Hodges*, the Texas Supreme Court explained:

> It is an elementary principle supported by many authorities that a litigant cannot ask something of a court and then complain that the court committed error in giving it to him. The rule, grounded in even justice and dictated by common sense, is that he is estopped.

158 S.W.2d 487, 488 (1942). The Court later stated, "As we explained in *Hodges*, a party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error'

---

[29] In light of this conclusion, we need not address appellees' argument that Eldorado failed to preserve error because the parties' fee stipulation in the trial court waived Eldorado's right to complain about a failure to segregate fees. Though we need not decide that question, we note one of our sister courts has considered and rejected a similar argument. *See Milliken v. Turoff*, No. 14-17-00282-CV, 2018 WL 1802207, at *3 (Tex. App.—Houston [14th Dist.] Apr. 17, 2018, no pet.) (mem. op.) (concluding appellants' fee-related stipulation in trial court did not waive complaint that trial court erred in awarding full amount of opponent's unsegregated attorneys' fees). In *Milliken*, unlike in this case, appellants brought the failure-to-segregate problem to the trial court's attention both before and after the stipulation. *Id.*

doctrine." *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005). The parties and the City jointly submitted a proposed judgment to the trial court with their joint motion for entry of final judgment. The final judgment was consistent with the proposed judgment, and both the proposed judgment and final judgment lack the language Eldorado now complains is missing. When, as here, the record on appeal conclusively establishes that the trial court entered its judgment in full compliance with the City and parties' joint request, all complaints by Eldorado about the trial court's action in so doing are foreclosed.[30]

Second, even if the invited error doctrine did not apply, whether fees are "equitable" or "just" under the Declaratory Judgment Act is a question of law, not fact, *see Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998),[31] and we presume from the record before us that the trial court followed the requirements of section 37.009. *See FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 140 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Although the trial court did not explicitly state in its judgment that the attorney's fees awarded are equitable and just, we presume the trial court followed the requirements of section 37.009."); *see also Corcoran v. Atascocita Cmty. Improvement Ass'n*, No. 14-12-00982-CV, 2013

---

[30] Considering our conclusion above on Eldorado's failure-to-segregate argument, we need not and do not decide whether, as appellees argue, the invited error doctrine also estops Eldorado from making that argument.

[31] *Bocquet* states, "[T]he Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." 972 S.W.2d at 21.

WL 5888127, at *9, 11 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, pet. denied) (mem. op.) (making same presumption).

Finally, we consider Eldorado's argument that appellees are not entitled to fees under civil practice and remedies code § 37.009, Article 10.5 of the Declaration, or property code § 5.006 because the trial court erred in granting summary judgment on appellees' claims. As Section III.A. above indicates, we disagree with Eldorado's premise and have already concluded the trial court did not err in granting summary judgment on appellees' claims except as to its fifth declaration. Thus, both civil practice and remedies code § 37.009 and Article 10.5 of the Declaration provide a basis for appellees' attorneys' fees awards, at least with respect to the portions of the judgment other than the fifth declaration.[32]

---

[32] We need not decide whether property code § 5.006, one of the three alleged bases for fees appellees included in their pleadings, also provides a basis for the attorneys' fees awards. On appeal, Eldorado maintains that none of the appellees have properly pleaded a cause of action to entitle them to fees under property code § 5.006 and that the fee awards can therefore not be supported on that basis. Eldorado failed to preserve error on that issue. *See* TEX. R. APP. P. 33.1(a); *Emery Air Freight Corp. v. Gen. Transp. Sys., Inc.*, 933 S.W.2d 312, 316 (Tex. App.—Houston [14th Dist.] 1996, no pet.) ("Even if appellee's pleadings did not justify an award of attorneys' fees, appellant waived this error when it allowed the court to consider attorneys' fees without objection. When a party allows the court to try an issue without objecting to insufficient pleading . . . that party cannot raise the pleading deficiency for the first time on appeal."), *disapproved of on other grounds by Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 670 n.50 (Tex. 2008). According to the record before us, Eldorado did not raise any issue in the trial court regarding appellees' entitlement to fees under property code § 5.006 on the basis of any alleged defective pleading. While the final judgment stated Eldorado "has not and does not waive its right to appeal this Final Judgment as to liability and as to [appellees'] entitlement to an award of damages and attorneys' fees," the record shows that at no point in the trial court did Eldorado make any arguments regarding the alleged defectiveness of appellees' pleadings as to their request for attorneys' fees under property code § 5.006. Instead, as the City and parties' joint motion for entry of final judgment reflects, Eldorado's complaint and reservation of rights to appeal the issue of attorneys' fees concerned only its disagreement with the trial court's ruling regarding Eldorado's liability, not any alleged defect in appellees' pleadings.

But an obvious question arises in light of our conclusion that the trial court erred in granting summary judgment with respect to the fifth declaration: under these circumstances, must we reverse the attorneys' fees awards and remand to the trial court for a new trial on attorneys' fees? Eldorado suggests we must, arguing that we must reverse and remand for a new trial on attorneys' fees if we reverse the judgment in any way.[33]

We disagree. First, though we do vacate the trial court's fifth declaration, we have not reversed the trial court's judgment in any way. Second, even if we had reversed part of the trial court's judgment, "When an appellate court reverses a declaratory judgment, it *may* reverse an attorney's fee award, *but it is not required to do so*." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015)

---

[33] As support, Eldorado cites *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314–15 (Tex. 2006) and *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991); cases that, as to attorneys' fees, primarily concern whether fee segregation is necessary and which both recognize the duty to segregate fees is not absolute. For example, *Chapa* states:

> A recognized exception to this duty to segregate arises when the attorneys' fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." . . . . Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorneys' fees may recover the entire amount covering all claims.

212 S.W.3d at 311; *see Sterling*, 822 S.W.2d at 11 ("A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'") (quoting *Flint & Assocs. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied)).

Even aside from the exception discussed in *Chapa* and *Sterling*, we have recognized that segregation of fees is unnecessary when—as here—fees are recoverable on all claims. *See Graman v. IBP Retail No. 5, L.P.*, No. 05-12-00565-CV, 2013 WL 3956920, at *2 (Tex. App.—Dallas July 30, 2013, no pet.) (mem. op.) (concluding appellee was not required to segregate its fees because all of the claims it was litigating provided for the recovery of attorneys' fees).

(emphasis added). Third, even when a portion of the judgment is reversed, we may conclude that reconsideration of attorneys' fees is not warranted when the outcome in the trial court as to the declaratory judgment is not substantially affected by our conclusions, as is the case here. *See Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 200–02, n.13 (Tex. App.—Dallas 2013, pet. denied) (concluding reconsideration of attorneys' fees was not warranted when we reversed the judgment as to declaration "b" on the basis that no evidence existed to support it and when outcome in trial court as to the declaratory judgment was not substantially affected by our conclusions on appeal).

We overrule Eldorado's second issue.

## IV. CONCLUSION

We vacate the trial court's fifth declaration in the final judgment, dismiss that portion of Eldorado's appeal, and otherwise affirm the trial court's judgment.


220198f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE

–35–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ELDORADO HOMEOWNERS'
ASSOCIATION, INC., Appellant

No. 05-22-00198-CV    V.

R. MICHAEL CLOUGH, J.
MICHELLE CLOUGH, ADAM
FLIERL, NICOLE FLIERL, BILLY
FOWLER, SUSAN FOWLER,
JACK HOLMES, JACQUI
HOLMES, ET AL., Appellees

On Appeal from the 199th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 199-03049-
2020.
Opinion delivered by Justice
Molberg. Chief Justice Burns and
Justice Reichek participating.

In accordance with this Court's opinion of this date, we **VACATE** the fifth declaration in the trial court's final judgment, **DISMISS** that portion of Eldorado's appeal, and otherwise **AFFIRM** the judgment. It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 2nd day of January, 2024.